107 P.3d 430

Sataro KIMURA, Toshiko Kimura, Stanley M. Kimura, Wendell Kazuyuki Kimura, Phyliss Toshiko Kimura, Hubert S. Kimura, Alfreda Fujita, Morris Kimura, Walter Kimura, Ella Yasuda, Clinton Kimura, Karen Hoe and Stuart Kimura, Plaintiffs–Appellees

v.

KAMALO; H.N. Kahalu, also known as Henry N. Kahalu; Geoffrey W. Rawson as Trustee in dissolution for Allen & Robinson, Limited; Mary Kauka, also known as Mary Mailani Miller Kealalio; Joseph Kealalio, also known as J. Kealalio and Joe Kealalio; Wife of Jesse K. Makainai, Jr.; Wife of Henry K. Makainai; Virginia K. Makainai; Pauline Beatrice Sarmiento; Joseph Kalani Garcia Sarmiento; Justina Keomailani Sarmiento; Maximo Momi Sarmiento; Jesse K. Makainai Sarmiento; Nathaniel Peleiholani Hiton; Lillian Pearl Kapiolani Hiton; Heirs of C. Bolte; Elizabeth K. Booth; Papa; Konoena; Koaea; Lizzie K. Davis, also known as Lizzie Kahaanapilo Davis; John Young Olohana Davis; George Hueu Davis; Alice Kahiliopua Bright, aka Alice K. Moriwaki; Kuai; J.K. Kaumualii; Kaainahuna; Richard K. Lovell; Vernette K. Lovell; Puueo Poi Factory, Inc.; Leslie Ching; Vernette Lovell as Personal Representative of The Estate of William K. Kamau, Sr.; David Aul; Earl J. Spenard; Jo Ann Spenard; Thomas Brown; Ed Crumpacker; Cornelia Crumpacker; Jack Curran; Irene Curran; Emily Dulay; Wallace Duncan; Ray Harris; June Harris; Rex Honl; Lori Honl; Larry Pandolfo; Susan Pandolfo; Takaichi Kobayakawa; Lloyd Melton; Alexandra Melton; Alice Moriwake; Jack Painter; Ralph Rehberg; Diane Rehberg; John Roberts; David K. Roy, Jr.; Arthur Small; Meredith Jean; Tamara Lynn Gilley; Saburo Yamato; Kikue Yamato; Hind Resources, Inc.; L.S. Dillingham Trust; C.W. Carlsmith Trust; Donn Carlsmith Trust; Dillingham Investment; J.M. Tanaka Investment Co.; Al-

---

14. I believe the other grounds raised by the prosecution on appeal were not meritorious.

ice Bright; Mary Tadame Mori, now known as Mary Tadame Ishida; Jack Tadayoshi Mori; Katherine Hoopale Chun; Robert Chun, Jr.; Wallace Chun; Melvin Chun; Barbara Chun Delos Santos; Emily Lihue Hoopale Dulay; Margaret Kiili; Mary Tanaka; Benjamin K. Waiolama; Emily L. Peralta; Genevieve Leimomi Rucker; Lily Hoopale Hao; Helen Bernard; Lily Bernard; Margaret Sari Hao; Benjamin Brown, Jr.; Avalon Brown Patricio; Lavon Brown; Aileen Hoopale Ho; Denise Ho Mai; Harry Ho, Jr.; Warren Ho; Ivan Ho; Seline Swanson; Gregory Ho; Lu Ann Ho; Anthony Ho; Margaret Hoopale Wong; Herny Stone; Anson Stone; Genrig Stone; Penelope Wong; Pandora Wong; Edwin S. Stone; Dorothy M. Stone; Daniel K. Kealalio; Lydia Dupont; Mary Kaoo Hui; Joseph Kealalio; Kaaumao Panee; Aileen K. Panee; Douglas Panee; Suzel L. Panee Ho; Ernest K. Panee; Eli Douglas Panee; Hattie Panee; Harriet Coelho; Jane Silva; Lydia Pavao; John Au Choy Panee, Jr.; Mabel Kamakahi; Agnes Chang; Mary Louis; David K. Roy, Jr.; Richard L. Stone; County of Hawai'i; State of Hawai'i; John Does 1 through 100; John Doe Partnerships 1 through 10; John Doe Corporations 1 through 10; John Doe Trusts 1 through 10; and Heirs, Assigns, Successors, Personal Representatives, Executors, Administrators, Guardians, and Trustees of the Above Named Defendants, and all other persons unknown claiming any right, title, estate, lien or interest in the real property described herein adverse to Plaintiffs' ownership, and to all whom it may Concern, Defendants–Appellees

and

Jessie Makainai, Joseph D. Garcia, Jr.; Beatrice Voight; Kevin Voight; George Voight; Max Sarmiento, and Maxine Sarmiento, Defendants–Appellants.

No. 24557.

Supreme Court of Hawai'i.

Feb. 23, 2005.

Alan T. Murakami (Native Hawaiian Legal Corporation), Honolulu, on the briefs, for defendants-appellants.

Wayne P. Nasser, Michael W. Gibson, and Jody Kaulukukui Li (Ashford & Wriston), Honolulu, on the briefs, for plaintiffs-appellees.

LEVINSON, ACOBA, and DUFFY, JJ.; with MOON, C.J. and NAKAYAMA, J., concurring separately.

Opinion of the Court by ACOBA, J.

Defendants–Appellants Jessie Makainai, Joseph D. Garcia, Jr., Beatrice Voight, Kevin Voight, George Voight, Max Sarmiento, and Maxine Sarmiento (hereinafter, Defendants) appeal from the August 14, 2001 final judgment of the circuit court of the third circuit [1] (the court), partitioning certain land. The other parties to the underlying partition action are Plaintiffs–Appellees Satoru Kimura and other members of the Kimura family (collectively, Plaintiffs) and Delgadina Perez Hiton, Howard Hiton, Ankie J.P. Hiton, William H. Keiki, Roy Akau, James Akau, Mark Leroy Akau, Heirs of Harry J. Akau, Loretta R. Akau Dias, Rachael Molina Bailey, and Barbara Jean Badayos (collectively, the Hitons or the Hiton Defendants). The final judgment partitions 48.576 acres of Grant 988 (the Property) into two parcels, one lot to

---

1. The Honorable Ronald Ibarra presided.

Plaintiffs, who were awarded an eighty-eight percent interest in the Property, and the second lot to Defendants and the Hitons, who were awarded the remaining twelve percent interest as tenants in common. For the reasons discussed herein, the August 14, 2001 final judgment is affirmed.

## I.

In 1852, the Property, containing approximately 64 acres of land located in Hōlualoa, District of North Kona, County of Hawai'i, was originally conveyed to Kamalo. Around November 1, 1897, a one-sixth interest in the Property was conveyed to Virginia K. Makainai (Virginia) from A.O. "East" Kahulaulii. Virginia leased this interest to various people, including Yoshimatsu Kimura (Yoshimatsu), at least through 1936. On August 1, 1931, a co-tenancy was created between Virginia and Yoshimatsu.

On August 3, 1933, Virginia conveyed her one-sixth interest in the Property to her children, Lily K. Makainai, Jesse K. Makainai Jr., Henry K. Makainai, and Virginia K. Makainai, and her grandchildren, Pauline Beatrice Sarmiento, Joseph Kalani Garcia Sarmiento, Justina Keomailani Sarmiento, Nathaniel Peleiholani Hiton, and Lillian Pearl Kapiolani Hiton. According to the court, the Makainai family stopped leasing, receiving lease rent from, and paying real property taxes on their combined one-sixth interest in the Property after 1938. The Kimura family, however, has paid the real property taxes on the Property since around 1940.

On September 11, 1989, Plaintiffs filed a complaint against, *inter alia*, Defendants Jessie Makainai, Joseph D. Garcia, Jr., and Beatrice Voight[2] to quiet title and for judicial partition of five parcels of land which includes the 48.576 acres of the Property,

Land Commission Award (LCA) 7803, LCA 8350, LCA 7806, and LCA 5868. All five parcels of land are located in Hōlualoa, District of North Kona, County of Hawai'i. Plaintiffs claimed possession and ownership over those five parcels of land through adverse possession.

On August 13, 1993, after a jury-waived trial, the court issued its Findings of Fact and Conclusions of Law and a Judgment. The Judgment declared Plaintiffs the owners of 100% of LCA 7803, LCA 8350, LCA 7806, and conditionally, LCA 5868.[3] Plaintiffs were also declared the owners of an undivided eighty-eight percent interest of the Property through adverse possession, and, as mentioned previously, Defendants were determined owners of an undivided twelve percent interest. The Findings of Fact and Conclusions of Law and the Judgment were amended on October 29, 1993.[4]

On November 30, 1994, the court appointed a Commissioner to partition the Property pursuant to the court's Judgment. On January 17, 1995, the Commissioner filed a Preliminary Commissioner's Report which set forth the following matters: (1) the County Planning Department did not object to subdividing the Property into two parcels; (2) there was an additional parcel available that could facilitate the consolidation and resubdivision of the property into two parcels; and (3) there was a "high degree of likelihood that a partition in kind was practicable."

On May 31, 1995, the Hiton Defendants were added as defendants pursuant to Defendants' Hawai'i Rules of Civil Procedure (HRCP) Rule 17(d)(3)[5] motion for certification of unknown defendants. However, the Hitons did not file answers to the complaint or appear in the proceedings.

---

**2.** The other named defendants on Defendants–Appellants' Opening Brief, Kevin Voight, George Voight, Max Sarmiento, and Maxine Sarmiento, were later identified by the original three Defendants and certified by the court in the court's 1995 Order for Certification of Unknown Defendants. *See infra.*

**3.** The court's August 13, 1993 judgment declared, in part, that Plaintiffs are owners in fee simple of 100% of LCA 5868 only if LCA 5868 is located within a certain tax map key.

**4.** The Judgment was first amended to specifically define who the Makainai owners were.

**5.** HRCP Rule 17(d)(3) provides, in relevant part that "[a]ny party may, by motion for certification, make the name or identity of the party defendant known to the court within a reasonable time after the moving party knew or should have known the name or identity of the party defendant."

On September 15, 1995, the court ordered the Commissioner to submit a written report comparing the estimated costs of a two-lot and a three-lot subdivision. On October 6, 1995, Defendants requested that the court subdivide the Property into three lots—Lot A to be set aside for the Kimura family interest; Lot B to be set aside for the Makainai family interest; and Lot C to be sold at a partition sale at a later date.

On November 2, 1995, the Commissioner submitted his report to the court which included the following assessments: (1) that both a two-lot and a three-lot subdivision were possible; (2) survey work for a three-lot subdivision would cost approximately $5,000 more than it would for a two-lot subdivision; (3) the cost of actual construction of a roadway and related improvements was not materially different between a two-lot and a three-lot subdivision; and (4) if there were any additional expenses for water and utilities for a third lot, such expenses should be borne by the party requesting the additional lot.

The Judgment was further amended on September 24, 1997.[6]

On September 20, 1999, the Commissioner filed a formal Request for Instructions asking the court whether to subdivide the subject property into two or three lots. Along with the Commissioner's request, the Commissioner reported that the Property may be "partitioned in kind" into two parcels consisting of twelve percent and eighty-eight percent of the total area of the Property, with the twelve percent parcel located on the makai portion of the Property. However, according to the Commissioner, should the court determine that the Property be divided into three lots, the additional cost for the third parcel would approximate $10,000 for "all of the professionals and for the extra infrastructure."

On October 26, 1999, the court issued an Order Instructing Commissioner in which it directed the Commissioner to create two lots in the appropriate sizes and locations in accordance with the Commissioner's representations, and to convey the larger of the two lots (the eighty-eight percent interest) to Plaintiffs, and the smaller lot (the twelve percent interest) to both Defendants and the Hitons. The court made certain findings: (1) the complaint in this action was filed in 1989; (2) Plaintiffs had been in exclusive possession of the subject property for several decades prior to the filing of the complaint; (3) Plaintiffs had been paying the real property taxes on the Property during the period of time they had exclusive possession of the Property; (4) the Commissioner reported that a three-lot subdivision would take six months to obtain approval, whereas a two-lot subdivision would take sixty days; (5) the additional lot in a three-lot subdivision would require $10,000 in additional costs; and (6) the Hitons are relatives of Defendants and, therefore, have an interest in Defendants' share of the Property. The Order concluded that "the [c]ourt in its discretion and based upon the record herein, the affidavit and representations of the Commissioner and pursuant to the powers bestowed upon the [c]ourt pursuant to [Hawai'i Revised Statutes (HRS)] § 668, orders and decrees that the Commissioner shall create two lots[.]"

On November 10, 1999, Defendants filed a motion for reconsideration of, *inter alia*, the court's October 26, 1999 Order. Defendants, in part, argued that "the court apparently allowed the notion of a blood relationship amongst the codefendants to influence its decision to abide Defendants ... with the exclusive financial burden of dealing with their perceived relatives who have never appeared in this action."

This motion also attached several letters as exhibits dating from December 14, 1995 to August 27, 1999, that were exchanged among Defendants' and Plaintiffs' counsel and the Commissioner. In these letters Defendants had sought to "discuss the possible partition options" with Plaintiffs and the Commissioner. Plaintiffs' counsel stated, in a letter dated August 7, 1998, that Plaintiffs were opposed to Defendants' proposal of subdividing the Property into three lots if it meant "further delay or expense." The Commissioner subsequently obtained the services of Wes Thomas and Associates to draft a possible

6. The Judgment was amended again in order to add certification under HRCP Rule 54(b).

partition option of a three-lot subdivision plan. According to this plan, Lot 1 would be 42.5964 acres (88% of the Property), Lot 2 would be 2.9043 acres (6% of the Property), and Lot 3 would be 2.9043 acres (6% of the Property).

On November 12, 1999, in addition to the motion for reconsideration and the attached exhibits, Defendants submitted an affidavit of Jesse Makainai, Jr. The affidavit referred, in part, to the relationship between Defendants and the Hitons:

> 9. I have also experienced [ (my parents') ] long-standing frustration over their inability to secure the cooperation of *other extended family members, about whom they learned only because of the geneaology research conducted in preparation for their defense.*
>
> 10. These relatives, Del Hiton, Ankie Hiton, and Howard Hiton[,] have never cooperated with my family to resolve the issues raised in this lawsuit, despite many past efforts to do so.
>
> 11. Neither I nor my parents have ever met these relatives and know practically nothing about them.
>
> 12. Neither I nor my parents have succeeded in communicated [sic] with the other 8 beneficiaries of the will of Lillian Hiton Hughes.
>
> 13. None of my immediate relatives has succeeded in convincing any of these 12 co-defendants to participate in this lawsuit over these years, despite many attempts by them and their attorneys to get them to bear their fair share of the costs involved.

(Emphasis added.) On November 19, 1999, Plaintiffs filed a memorandum in opposition to Defendants' motion for reconsideration. On November 30, 1999, after having reviewed "the [a]ffidavit of Jesse Makainai, ... Plaintiffs' [m]emorandum in [o]pposition ..., and the record and file of the case," the court denied Defendants' motion for reconsideration.

On August 14, 2001, Final Judgment was entered that declared, *inter alia,* that the Property should be divided into two lots pursuant to the Commissioner's prior assessment of the Property.[7] The collective twelve percent interest in the Property of Defendants and the Hiton Defendants was divided as follows: an aggregate 72.415% allocation of the twelve percent interest to Defendants and an aggregate 27.585% allocation of the twelve percent interest to the Hiton Defendants. Defendants filed a Notice of Appeal on September 12, 2001, from the August 14, 2001 Final Judgment.

## II.

On appeal, Defendants do not contest the court's percentage allocation of the Property between Plaintiffs (88%) and Defendants (12%). Rather, Defendants contend that the court erred when it determined that Defendants and the Hitons should be treated as tenants in common in the second lot inasmuch as (1) the court's decision to partition the Property into two parcels rather than three lots disregarded Hawaii's partition statutes; (2) alternatively, the court "improperly weighed equitable factors" and "considered incorrect and irrelevant information in its equitable determination"; and (3) the court reached a result "in substantial detriment to the Defendants" because Plaintiffs should contribute, based on Plaintiffs' proportionate share, to the additional costs associated with a third lot. Defendants request that the August 14, 2001 Final Judgment be vacated and the case remanded to the court with instructions to partition the property into three parcels, thereby granting Defendants a lot of their own, partitioned separately from that of the Hitons.

## III.

Since a partition action is an action in equity, we review a partition finding under the abuse of discretion standard. See *AIG Hawaii Ins. Co., Inc. v. Bateman,* 82 Hawai'i 453, 457, 923 P.2d 395, 399 (1996). Under

---

7. The Judgment also declared Defendant John Roberts to be a possible owner of LCA 5868 if it is not located within a certain tax map key, all minerals and metallic mines and rights of native

tenants to be in favor of the State of Hawai'i, and all other defendants to have no title or interest in the Property.

the abuse of discretion standard, unless there is abuse, a trial court's discretion should not be disturbed. *Sugarman v. Kapu,* 104 Hawai'i 119, 124, 85 P.3d 644, 649 (2004). Abuse is apparent when a trial court's discretion " 'clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.' " *Id.* (quoting *Indus. Mortgage Co. v. Smith,* 94 Hawai'i 502, 510, 17 P.3d 851, 859 (App.2001)). "In exercising its discretion, the 'court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned[.]' " *Id.* (quoting *Brent v. Staveris Dev. Corp.,* 7 Haw.App. 40, 45, 741 P.2d 722, 726 (1987)).

## IV.

▇▇ As to Defendants' first contention, a trial court's construction of a statute is reviewed under the *de novo* standard. "The interpretation of a statute is a question of law. Review is *de novo,* and the standard of review is right/wrong." *Sugarman,* 104 Hawai'i at 123, 85 P.3d at 648.

▇▇ Defendants assert that HRS §§ 668–1,[8] 668–7(4), and 668–9 (1993) were disregarded by the court when the court determined that the Property should be consolidated and resubdivided into two lots. In construing a statute, a court's primary obligation " 'is to ascertain and give effect to the intention of the legislature' which 'is to be obtained primarily from the language contained in the statute itself.' " *Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993) (quoting *In re Hawaiian*

*Tel. Co.,* 61 Haw. 572, 577, 608 P.2d 383, 387 (1980)).

HRS § 668–7(4) states that "[t]he court shall have power, subject to section 668–8.5[ [9] ] ... (4)[t]o cause the property to be equitably divided between the parties according to their respective proportionate interests therein, as the parties agree, or by the drawing of lots." Defendants contend that the plain meaning of HRS § 668–7(4) requires that their interest in the Property be partitioned from that of the Hitons' interest.

Contrary to Defendants' contention, however, the statute is silent as to whether a court is required to partition property according to each parties' proportionate interest because a party so requests. What is apparent from the plain language of HRS § 668–7(4) is that when there is an agreement between the parties or a drawing of lots, a court is vested with the power to equitably divide the property based on such an agreement or drawing of lots. *See Campbell v. Deponte,* 57 Haw. 510, 514, 559 P.2d 739, 742 (1977) ("Since there was neither agreement or a drawing of lots, it is difficult to fit the present case into [HRS § 668–7(4) ]."). Defendants assert that there is such an agreement based on letters attached as exhibits to its motion for reconsideration.

However, assuming, *arguendo,* an agreement between the parties existed, HRS § 668–7(4) does not require the court to follow it. HRS § 668–7(4) vests the court with authority to partition in kind or to order a sale. Additionally, HRS chapter 668 supple-

---

8. HRS § 668–1 states, in relevant part:

**Actions for partition.** When two or more persons hold or are in possession of real property ... as tenants in common, in which one or more of them have an estate in fee, ... any one or more of such persons may bring an action in the circuit court of the circuit in which the property or some part thereof is situated, for a partition of the property, according to the respective rights of the parties interested therein, and for a sale of the same or a part thereof if it appears that a partition cannot be made without great prejudice to the owners. The several circuit courts shall have power, *in any action for partition, to proceed according to the usual practice of courts of equity in cases of partition, and according to this chapter in enlargement thereof.*

(Emphasis added.)

9. HRS § 668–8.5 (1993), which is not an issue to the case at bar, states:

**Adverse claimants.** Unless the action is combined with an action under chapter 669, a person who has not appeared and who claims to hold by title paramount to that under which the plaintiff claims as a cotenant shall not be concluded by the judgment, but may maintain an action asserting his title against any or all of the parties, or persons holding under them, within the time in which he might have brought such action if the action for partition had not been filed.

ments a court's equitable power in a partition action. *See Sugarman*, 104 Hawai'i at 124, 85 P.3d at 649 ("[T]he legislature intended that provisions of HRS chapter 668 supplement the court's equitable power."). Here, the court applied its "equitable power" in finding that the Property should be divided into two lots. Accordingly, the court did not disregard HRS § 668–7(4).

█ The above analysis also applies with the same effect when applying the plain language of HRS § 668–9. HRS § 668–9 states, in relevant part:

> **Unknown and absent owners.** ... If there are any unknown owners of any share or interest, or any other owners served under sections 634–23 or 634–24 who do not appear in the action, *the court shall have power in making the general partition to allot and set apart for such share such a portion or portions of the property as the owners thereof would respectively be entitled to receive in the partition were they known and had appeared in the action.* The portion so set apart for such share shall thereafter alone be the subject of ownership by such owner if the owner has been served. The remaining portions of the property shall be regarded as belonging to the other parties interested therein.

(Emphasis added.) Again, HRS § 668–9 vests the court with authority to designate that portion of the property as to those "owners who do not appear in the action" such as the Hitons. The statute however, does not mandate that the court exercise that power in every case. As HRS § 668–1 states, the courts are also charged with equitable power "in any action for partition." To a certain extent, the court did exercise its "power in making the ... partition" when it "allot[ted]" to the Hitons an undivided portion of the twelve percent interest in the Property. HRS § 668–9. Under the circumstances however, the court did not specifically partition the common interests of Defendants and the Hitons. *See* discussion *infra*. The fact that it chose not to do so does not mean that in exercising its discretion in subdividing the Property into two rather than three lots, it

violated HRS § 668–9 as Defendants maintain.

## V.

In furtherance of its arguments that the court disregarded HRS §§ 668–1, 668–7, and 668–9, Defendants rely on several cases outside of this jurisdiction to establish that the right to partition is absolute. *See Yates v. Yates*, 571 S.W.2d 293, 296 (Tenn.1978) (" 'The policy of the law is to give each person his own, in severalty, and not to force a person to continue in partnership with another.' " (Quoting Section 1105, Gibson's Suits in Chancery (Fifth ed.).)); *Melvin v. Shaw*, 418 P.2d 697, 699 (Okla.1966) ("The general rule is that a party to a partition action has the right to have his interest in the property alloted to him in severalty and cannot be compelled, over his objection, to accept an allotment in common with others."); *Prusa v. Cermak*, 414 P.2d 297, 300 (Okla.1966) ("[I]t is generally recognized that the right of a cotenant to partition property is absolute and not to be defeated by the mere unwillingness of a party to have partitioned."); *State of Missouri v. Tate*, 365 Mo. 1213, 295 S.W.2d 167, 168 (1956) (approving *Stewart v. Stewart*, 277 S.W.2d 322 (Mo.Ct. App.1955)); *Stewart*, 277 S.W.2d at 324 ("Where a partition suit is brought fairly within the statutes ... and is not prohibited by a valid agreement to the contrary, the right of a cotenant to partition is absolute ... and yields to no consideration of hardship or inconvenience." (Quotation marks and citations omitted.)).

Although these cases correctly set forth the general rule, as noted before, the court possesses equitable powers pursuant to HRS §§ 668–1 and 668–7(4) in partition actions. Absent an abuse of discretion in the exercise of its powers, a trial court's discretion should not be disturbed. *See Sugarman*, 104 Hawai'i at 124, 85 P.3d at 649; discussion *infra*.

## VI.

█ Defendants' second contention is that the court "improperly weighed equitable factors" and "considered incorrect and irrelevant information." By this argument, Defendants apparently challenge some of the

court's October 26, 1999 findings. Among these findings, Defendants appear to dispute finding one, that the complaint in this action was filed in 1989; finding three, that Plaintiffs had been paying the real property taxes on the Property during the period of time they had exclusive possession of the Property; and finding six, that the Hitons are relatives of Defendants.

As to finding one, that the complaint in this action was filed in 1989, Defendants argue that the court "appeared to be concerned about the amount of time it had taken to [pursue] a quiet title and partition of the property." The Defendants assert that the court "failed to consider the many factors that contributed to the long history of this action, including the complicated title history . . ., the number of defendants who responded to the complaint, a long and complex title trial, the subsequent appeal by one of the defendants,[10] and the necessity of joining additional defendants to ensure . . . finality[.]" The Defendants also posit that the court "seems to have considered that the passage of time had adversely affected the [Plaintiffs] . . . without considering the affect [sic] on the [Defendants] who also suffered substantial harm for the delays." It may be noted that Defendants essentially extrapolate from a finding that is not disputed, *i.e.,* that the complaint was filed in 1989, matters not expressly stated therein.

As to finding three, that Plaintiffs had been paying the real property taxes on the Property during the period of time Plaintiffs had exclusive possession of the Property, Defendants argue that the court improperly considered this factor as the "record did not show the extent of the burden of real property tax payments." Defendants also maintain that Plaintiffs' arguments were "purely speculative" because "the court was in no position to judge what benefits accrued relative to the expenses borne by the [Plaintiffs] . . . or how

much offsetting revenue [Plaintiffs] were able to generate by using" the Property. Again, Defendants extrapolate matters not expressed by the court from a finding that is not disputed, *i.e.,* that the Plaintiffs had paid the real property taxes on the Property.

As to finding six, that the Hitons and Defendants are related, Defendants contend that consideration of "familial relationship is irrelevant to the right of a cotenant to separate out his or her interest from those of other cotenants" and that assuming such a relationship is relevant, the court relied on incorrect information that the Hitons were all related to the Defendants. Defendants assert that "[o]f the twelve Hiton [D]efendants only four are related to the [Defendants] . . . The [eight] other Hiton [D]efendants . . . are complete strangers to [Defendants]."

When a party contests a finding of fact that was made by the trial court, that finding of fact will be presumptively correct unless it is proven to be clearly erroneous. *Campbell,* 57 Haw. at 513, 559 P.2d at 741. As previously noted in Defendants' November 10, 1999 motion for reconsideration, Defendants maintained that there was no "blood relationship" between Defendants and all of the Hitons. However, as previously mentioned, the November 12, 1999 affidavit of Jesse Makainai, the son of one of the Defendants, represented that Defendants learned of the Hitons as *"other extended family members . . . because of the geneaology research* conducted in preparation" for Defendants in this present partition action. (Emphasis added.) In light of these representations by Defendants, the court's finding that the Hitons were "relatives of Defendants," albeit not "blood relatives," was not clearly erroneous.

As to other findings made by the court on October 29, 1993, finding two, that Plaintiffs were in exclusive possession of the Property

---

10. In their November 10, 1999 motion for reconsideration, Defendants argue that the delay in the partition action was due in part to a HRCP Rule 54(b) motion for certification of final judgment filed by Defendants, followed by an appeal by the surviving spouse of Alice Moriwake, one of the Defendants. Defendants represent that this court dismissed that appeal on July 8, 1997. The record on appeal indicates an order of dismissal was filed on July 11, 1997. In addition, there appears to have been a second appeal filed on October 23, 1997 by the surviving spouse of Alice Moriwake. Both Plaintiffs and Defendants, however, do not make reference to this second appeal.

for decades before the filing of the initial complaint, is not disputed by Defendants. Finding four, that a three-lot subdivision would take six months to obtain approval while a two-lot subdivision would take sixty days, and finding five, that the third lot would require an additional $10,000 in costs, are also not contested by Defendants.

In addition to these findings, other circumstances in the record not addressed by Defendants are that (1) the Hitons were identified as unknown defendants through the Defendants' motion, (2) the Hiton Defendants were identified in the partition action in 1995, over five years after the filing of the complaint, (3) the Hiton Defendants did not appear in this case throughout the six year period after identification, and (4) Defendants are not foreclosed in the future from subdividing their lot among themselves and the Hiton Defendants.

In determining whether the court has abused its discretion, we cannot conclude that the court violated "reason" or "rules or principles of law or practice." *Sugarman,* 104 Hawai'i at 124, 85 P.3d at 649. At the time of the filing of the final judgment on August 14, 2001, the action had taken twelve years to resolve since the filing of the initial complaint in 1989. Plaintiffs had exclusive possession of the Property before the filing of the complaint. Plaintiffs had paid real property taxes from about 1940 and throughout the partition action. Defendants had stopped paying taxes on the Property at around 1938. The cost and time for subdividing the Property into two lots was less than the cost and time involved in completing a three-lot subdivision. The Hitons were identified by Defendants five years after the commencement of the action. The Hitons were relatives of Defendants as established by a genealogy study conducted by Defendants. The Hitons had not appeared in the action. Defendants were not prohibited from filing a future partition action as between them and the Hitons if necessary. As men-

tioned below, a request for assessment of costs against the Hiton Defendants' interests may be made under HRS § 668–17 to mitigate any undue burden suffered by Defendants. Given the history of this partition action and the considerations noted by the court, it cannot be concluded that the court abused its discretion in ordering partition of the Property into two, but not three, parcels at the time that it did.

The plain language of HRS § 668–1 authorizes a court to exercise its equitable discretion "in any action for partition." A court's use of its discretion is necessary "to accomplish a just result under the circumstances." *Sugarman,* 104 Hawai'i at 124, 85 P.3d at 649. In light of the facts in the record, it cannot be concluded that there was an abuse of discretion.

## VII.

As its final argument, Defendants maintain that the court reached a result "in substantial detriment to the Defendants" and that the Plaintiffs "should pay their proportionate share of the costs of a three-parcel partition." Plaintiffs argue that "truly what is at issue in this matter [is that Defendants] want [Plaintiffs] to pay their 'proportionate share'—*i.e.,* 88% of the costs of separating [Defendants] from [the Hitons.] On the other hand, Defendants maintain that they "may face insurmountable financial hurdles should they be saddled with the exclusive financial burden of dealing with [the] recalcitrant [Hitons,]" and "[t]hat burden should have been borne by all the parties in proportion to their interests in Grant 988." [11] Defendants rest their assertion on HRS § 668–17 (1993). HRS § 668–17 states, in relevant part as follows:

> **Costs.** All costs of the proceedings in partition shall be paid by the plaintiff in the first instance, but eventually by all of the parties in proportion to their interests, *except such costs which may be occasioned by contests as to particular shares or in-*

---

11. In their opening brief, Defendants argue that "the imposition of the two-lot partition poses serious financial burdens[.]" Defendants assert that in 1999, the estimated cost to further subdivide and partition their interests from the Hitons would "exceed $35,000 conservatively, all of which the [Defendants] would have to bear ex-

clusively." According to Defendants, this increase in costs would be attributable to increased subdivision costs between 1995 and 1999, and serving the Hitons and paying the associated attorneys' fees and costs to a new partition action.

*terests, which shall be charged against the particular shares or interests involved and be paid as determined by the result of the trial of the particular issue.*

(Emphasis added.)

HRS § 668–17 instructs the court on how costs are to be allocated among parties "in proportion to their interests." As we concluded *supra*, the court cannot be said to have exceeded its power in ordering the property to be subdivided into two lots. Hence, the allocation of costs based on the two-lot alternative adopted by the court would not be violative of HRS § 668–17. In any subsequent proceeding partitioning the second lot among Defendants and the Hiton Defendants, the court obviously has the power under HRS § 668–17 and in equity to allocate costs as between Defendants and the Hiton Defendants so as to equalize any burden that has befallen or would be incurred by Defendants.

## VIII.

Accordingly, the August 14, 2001 judgment of the court is affirmed.

Concurring Opinion by MOON, C.J., and NAKAYAMA, J.

I concur in the result only.