Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000054
28-JAN-2013
08:08 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


THOMAS E. FRATINARDO and JOSEPH SELF, JR.,
on behalf of themselves and a class of
similarly situated persons,
Appellants-Appellants,
v.
THE EMPLOYEES' RETIREMENT SYSTEM
OF THE STATE OF HAWAIʻI,
Appellee-Appellee
and
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10,
DOE PARTNERSHIPS 1-10, DOE NON-PROFIT ORGANIZATIONS 1-10,
and DOE ENTITIES 1-10,
Appellees-Appellees


NO. CAAP-12-0000054


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-0749)


JANUARY 28, 2013


FOLEY, PRESIDING J., FUJISE AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

In this secondary appeal of an administrative agency decision, Petitioners-Appellants Thomas E. Fratinardo and Joseph Self, Jr. (Petitioners) appeal from the Final Judgment entered January 24, 2012 in the Circuit Court of the First Circuit[1] (circuit court). The circuit court entered judgment in favor of Respondent-Appellee the Employees' Retirement System of the State of Hawai'i (ERS) and against Petitioners pursuant to the circuit court's "Order Affirming the Final Decision of the Board of Trustees of the Employees' Retirement System of the State of Hawai'i and Dismissing Appeal" (Order), entered January 20, 2012.

On appeal, Petitioners contend the circuit court erred in affirming the ERS's construction of "compensation" to exclude the car, firearm, and uniform allowances paid to Petitioners in calculating Petitioners' retirement benefits.

## I. BACKGROUND

Petitioners are retired police officers. Self retired in 2002, and Fratinardo retired in 2004. During their employment, in addition to their salaries, they received car, uniform, and firearm allowances. The car allowance was a fixed payment of $488 per month provided to police officers who were required by the employer to purchase and regularly use their private automobiles for official duty. The allowance amount did not vary based on the type of car owned, how much the car was driven, or any other cost of operation, maintenance, or ownership to the Petitioners. The uniform and firearm allowances were also fixed payments but were paid only once per year until 1994. In

_____

[1]    The Honorable Rhonda A. Nishimura presided.

2

1994, under a new collective bargaining agreement between the State of Hawai'i Organization of Police Officers (SHOPO) and Petitioners' employers, the uniform and firearm allowances were classified as a "Standard of Conduct Differential" (SOCD) and were paid monthly at a fixed rate. The allowances and the SOCD were benefits guaranteed by the collective bargaining agreements and could not be changed without union approval.

As police officers, Petitioners were members of ERS's state and county pension plan and were required to contribute 12.2% of their "compensation" to the retirement plan. Hawaii Revised Statutes (HRS) §§ 88-42 (Supp. 1994) and 88-45 (1993). Pursuant to HRS § 88-46 (Supp. 1997), Petitioners' employers deducted Petitioners' contributions from their paychecks and transmitted them to ERS. It is undisputed that Petitioners and their employers did not make any contributions to ERS for the amounts Petitioners received for the car, uniform, and firearm allowances. When Petitioners retired, ERS calculated their pension benefits and did not include the car, uniform, or firearm allowances as compensation.

Petitioners then filed a Petition for Declaratory Relief to ERS, arguing ERS had improperly denied them higher retirement benefits by excluding the uniform, firearm, and car allowances from the calculation of their retirement benefits. The ERS hearing officer heard oral arguments and issued a Recommended Decision concluding Petitioners had "failed to carry their burden of proof and burden of persuasion in seeking to establish that the ERS had violated HRS Chapter 88 [(1993)], particularly HRS §§ 88-45 and 88-81, by excluding car, uniform maintenance, and firearm maintenance allowances" from the calculation of their retirement benefits. Pursuant to ERS

3

administrative rules, the Board of Trustees of the Employees' Retirement System of the State of Hawaiʻi (Board) issued a Proposed Decision adopting the hearing officer's Recommended Decision with minor modifications.

Both parties filed exceptions to the Proposed Decision, which were argued to the Board on February 14, 2011.  The Board then issued its Final Decision affirming the Proposed Decision and adopting the Recommended Decision, including the hearing officer's findings of fact and conclusions of law, with further modifications.  The Board concluded "compensation" as used in HRS Chapter 88 is "pay or salary that is tied to services rendered and not reimbursement for employee expenses."  The Board determined the car, uniform, and firearm allowances were cost reimbursements and were not tied to services rendered, and therefore the allowances should not be considered "compensation" in calculating Petitioners' retirement benefits.

Petitioners appealed the Board's Final Decision to the circuit court.  After hearing oral argument on December 21, 2011, the circuit court entered its Order affirming the Board's Final Decision and dismissing the appeal.  The court then entered the Final Judgment on the Order, from which Petitioners timely appealed to this court.

## II.    STANDARDS OF REVIEW

### A.    Secondary Appeal

> "'Review of a decision made by a court upon its review of an administrative decision is a secondary appeal.  The standard of review is one in which [the appellate] court must determine whether the court under review was right or wrong in its decision.'"  *Leslie v. Bd. of Appeals of County of Hawaii*, 109 Hawaiʻi 384, 391, 126 P.3d 1071, 1078 (2006) (quoting *Lanai Co., Inc. v. Land Use Comm'n*, 105 Hawaiʻi 296, 306-07, 97 P.3d 372, 382-83 (2004) (other citation omitted)).  The standards as set forth in HRS § 91-14(g) (1993) are applied to the agency's decision. *Ka Paʻakai O*

4

*Ka'aina v. Land Use Comm'n*, 94 Hawai'i 31, 40, 7 P.3d 1068, 1077 (2000). HRS § 91-14(g) provides:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"'Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).'" *Sierra Club v. Office of Planning, State of Hawai'i*, 109 Hawai'i 411, 414, 126 P.3d 1098, 1101 (2006) (quoting *In re Hawaiian Elec. Co.*, 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (other citation omitted)).

"'An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.'" *Poe v. Hawai'i Labor Relations Bd.*, 105 Hawai'i 97, 100, 94 P.3d 652, 655 (2004) (quoting *Kilauea Neighborhood Ass'n v. Land Use Comm'n*, 7 Haw. App. 227, 229-30, 751 P.2d 1031, 1034 (1988)). "'[T]he courts may freely review an agency's [COL].'" *Lanai Co.*, 105 Hawai'i at 307, 97 P.3d at 383 (quoting *Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (other citation omitted)). "Abuse is apparent when the discretion exercised clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Kimura v. Kamalo*, 106 Hawai'i 501,

507, 107 P.3d 430, 436 (2005) (internal quotation marks and citation omitted).

Brescia v. North Shore Ohana, 115 Hawaiʻi 477, 491-92, 168 P.3d 929, 943-44 (2007) (some brackets in original and some added).

### B. Deference to Administrative Agency Decision

In determining whether an agency determination should be given deference, the standard to be applied is as follows:

> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind that the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to de novo review.

> *Paul's Electrical Service, Inc. v. Befitel*, 104 Hawaiʻi 412, 419-20, 91 P.3d 494, 501-[02] (2004).

Olelo: The Corp. for Cmty. Television v. Office of Info. Practices, 116 Hawaiʻi 337, 344, 173 P.3d 484, 491 (2007).

"[I]n deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency where mixed questions of fact and law are presented. This is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it." Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) (citation omitted).

### C. Statutory Interpretation

The interpretation of a statute is a question of law that is reviewed de novo.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists[.]

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

[The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it [] to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

Morgan v. Planning Dep't, County of Kaua'i, 104 Hawai'i 173, 179-80, 86 P.3d 982, 988-89 (2004) (citations and internal quotation marks omitted).

[W]here an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous.

Id. at 180, 86 P.3d at 989 (citing Ka Pa'akai O Ka 'Aina v. Land Use Comm'n, State of Hawai'i, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000)). Stated differently:

Where an agency is statutorily responsible for carrying out the mandate of a statute which contains broad or ambiguous language, that agency's interpretation and application of the statute is generally accorded judicial deference on appellate review. Vail v. Employees' Retirement System, 75 Haw. 42, 59, 856 P.2d 1227, 1237 (1993). However, an interpretation by an agency of a statute it administers is not entitled to deference if the interpretation is plainly erroneous and inconsistent

> with both the letter and intent of the statutory mandate. Kahana Sunset Owners v. County of Maui, 86 Hawai'i 66, 72, 947 P.2d 378, 384 (1997).
>
> TIG Ins. Co. v. Kauhane, 101 Hawai'i 311, 321, 67 P.3d 810, 820 (App. 2003) (brackets and internal quotation marks omitted).

Haole v. State of Hawai'i, 111 Hawai'i 144, 149-50, 140 P.3d 377, 382-83 (2006) (some brackets in original and some added).

### III. DISCUSSION

This appeal turns on the meaning of the word "compensation" as used in HRS Chapter 88 and whether the car, firearm, and uniform allowances constitute compensation. We apply the following principles in construing statutes:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Estate of Roxas v. Marcos, 121 Hawai'i 59, 66, 214 P.3d 598, 605 (2009) (quoting Carlisle v. One (1) Boat, 119 Hawai'i 245, 256, 195 P.3d 1177, 1188 (2008)).

Pursuant to HRS § 88-74(1) (Supp. 2002), the formula for calculating a police officer's retirement benefits is: average final compensation x years of credited service x 2.5%. In relevant part, HRS § 88-81(a) (2002) defined "average final compensation" as "the average annual compensation pay or salary upon which a member has made contributions as required by

8

sections 88-45 and 88-46." HRS § 88-45 required Petitioners to "contribute twelve and two-tenths per cent of their compensation to the annuity savings fund for service in that capacity."

At the time Petitioners retired, HRS Chapter 88 did not define "compensation," and there is no administrative rule or case law interpreting the term. In its Final Decision, the Board construed "compensation" as "pay or salary that is tied to services rendered and not reimbursement for employee expenses[,]" and it concluded the car, uniform, and firearm allowances were reimbursements. Petitioners, on the other hand, contend the plain and ordinary meaning of "compensation" is expansive and includes payments such as the car, uniform, and firearm allowances. Pursuant to HRS § 1-14 (1993), "[t]he words of a law are generally to be understood in their most known and usual signification," and where a term is not statutorily defined, the court may resort to legal or lay dictionaries to determine the ordinary meaning of the term. Gillan v. Gov't Employees Ins. Co., 119 Hawai'i 109, 115, 194 P.3d 1071, 1077 (2008). Petitioners cite Black's Law Dictionary, which defines "compensation" in the employment context as "[r]emuneration and *other benefits* received in return for services rendered; esp., salary or wages. . . . [Compensation] includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and *expense reimbursements*." Black's Law Dictionary 322 (9th Ed. 2009) (internal quotation marks omitted) (emphases added). Consequently, Petitioners contend ERS's interpretation is an unjustified departure from the plain and unambiguous meaning of the statutory language.

Because the parties proffer two different reasonable interpretations, however, we conclude the term "compensation" is not "plain and unambiguous." See Roxas, 121 Hawai'i at 68, 214 P.3d at 607 ("[A] statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses."). "[I]n the case of broad or ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous." Vail v. Employees' Ret. Sys., 75 Haw. 42, 66, 856 P.2d 1227, 1240 (deferring to the employees' retirement system's reading of an ambiguous term in HRS § 88-43 (1993), because the plaintiff had failed to demonstrate that the reading was palpably erroneous).

Although Petitioners present a plausible interpretation, the dictionary definition of "compensation" is only a starting point in ascertaining its meaning, and the plain language rule of statutory construction does not prelude an examination of other sources and of the context of the entire statute. Shipley v. Ala Moana Hotel, 83 Hawai'i 361, 364-65, 926 P.2d 1284, 1287-88 (1996). Furthermore, the dictionary does not clearly set the scope of the term "compensation." For instance, Black's Law Dictionary indicates the definition is especially tied to "salary or wages." Because nothing in the statutory language of HRS Chapter 88 or in the legislative record directly corroborates Petitioners' interpretation or undermines ERS's, we conclude Petitioners have failed to demonstrate that ERS's construction is "palpably erroneous." Therefore, the circuit

10

court did not err in affirming ERS's decision against
Petitioners.

> When construing an ambiguous statute,
> the meaning of the ambiguous words may be sought by
> examining the context, with which the ambiguous words,
> phrases, and sentences may be compared, in order to
> ascertain their true meaning. Moreover, the courts may
> resort to extrinsic aids in determining legislative intent.
> One avenue is the use of legislative history as an
> interpretive tool. This court may also consider the reason
> and spirit of the law, and the cause which induced the
> legislature to enact it to discover its true meaning. Laws
> in *pari materia*, or upon the same subject matter, shall be
> construed with reference to each other. What is clear in one
> statute may be called upon in aid to explain what is
> doubtful in another.

Roxas, 121 Hawai'i at 68, 214 P.3d at 607 (quoting In re Water
Use Permit Applications, 94 Hawai'i 97, 144, 9 P.3d 409, 456
(2000).  Because legislative history does not clarify the
ambiguity in this case, we resort to other aids.

The Board primarily based its definition on reading HRS
§§ 88-81 and 88-45 in pari materia.  HRS § 88-81 provided, in
relevant part, "[a]verage final compensation is the average
annual compensation pay or salary[.]"  Applying the doctrines of
noscitur a sociis[2] and ejusdem generis,[3]  ERS contends the more
generic term "compensation" must take its color of meaning from

---

[2]     "[F]reely translated as 'words of a feather flock together,' that
is, the meaning of a word is to be judged by the company it keeps." Kamalu v.
Paren, Inc., 110 Hawai'i 269, 278 n. 10, 132 P.3d 378, 387 n. 10 (2006). See
also HRS § 1-15(1) (1993) ("The meaning of ... ambiguous words may be sought
by examining the context, with which the ambiguous words, phrases, and
sentences may be compared, in order to ascertain their true meaning.").

[3]     Where specific words follow general words in a statute, the
doctrine restricts application of the general term to things similar to those
enumerated. Holi v. AIG Hawaii Ins. Co., Inc., 113 Hawai'i 196, 204, 150 P.3d
845, 853 (App. 2007).  The doctrine construes all parts of a statute together
and treats no word as superfluous, noting "[i]f the general words are given
their full and natural meaning, they would include the objects designated by
the specific words, making the latter superfluous." Id. (quoting Sutherland
Statutory Construction § 47.17) (5th ed. 1992).

"pay" and "salary," and therefore the whole refers to remuneration for services rendered or work performed. See Webster's Third New International Dictionary 1659, 2003 (1986) (defining pay as "to satisfy (someone) for services rendered" and salary as "to pay (as a person) for something done"). ERS also argues HRS Chapter 88's provisions express an overall purpose and policy of providing benefits based on services rendered. See HRS § 88-45 (requiring officers to contribute a portion of their compensation "for service in that capacity"); HRS § 88-21 (defining "membership service" as "all service rendered by a member"). The Board characterized the allowances as payments to reimburse or subsidize the costs the officers incurred during employment and concluded it would be "unfair and unreasonable" to interpret HRS §§ 88-45 and 88-81 such that officers who used their private automobiles would receive more retirement benefits than officers who used county-owned or public automobiles.

Although the phrase "compensation pay or salary" may be too short and indistinct to apply noscitur a sociis and ejusdem generis as ERS urges,[4] a review of HRS Chapter 88 strengthens ERS's case for narrowing the interpretation of "compensation." First, at the time Petitioners retired, the Hawai'i State Legislature (Legislature) did not provide a definition for any of the terms "compensation," "pay," or "salary,"[5] and HRS Chapter

_____

[4]    See, e.g., Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 130 S. Ct. 1396, 1403 (2010), reh'g denied, 130 S. Ct. 3351 (2010) (rejecting application of noscitur a sociis to the phrase "congressional, administrative, or Government Accounting Office," stating the substantive connection between the terms "is not so tight or self-evident as to demand that we 'rob' any one of them 'of its independent and ordinary significance'").

[5]    Effective 2012, the Legislature added a definition of "compensation" which is discussed further below. The Legislature also added a
(continued...)

88's provisions do not clearly indicate the Legislature viewed the terms "compensation," "pay," and "salary" as distinct terms, at least at the time it enacted these provisions.[6] HRS § 88-26 (1993) also indicates the Legislature did not view reimbursements as a form of compensation. HRS § 88-26 provides that ERS's trustees "shall serve *without compensation* but they shall be *reimbursed* from the expense fund for all necessary expenses and for any loss of salary or wages they may suffer through serving the board of trustees." HRS § 88-26 (emphases added). Therefore, the statutory language of HRS Chapter 88 viewed in pari materia supports ERS's construction, at least to such an extent to justify our conclusion that ERS's position is not "palpably erroneous" and is entitled to deference.

Moreover, the Legislature's subsequent definition of compensation does not alter our conclusion. The definition provided in HRS § 88-21.5 is not binding in this case because it took effect in July 7, 2004, after Petitioners retired. See Act 182, 2004 Session Laws of Hawai‘i. "Although we look to subsequent legislative history to confirm our interpretation of earlier statutory provisions, we weigh such arguments with extreme care." First Ins. Co. of Hawai‘i, Ltd. v. Dayoan, 124

---

[5] (...continued)
definition of "base pay" to address significant increases in an employee's compensation immediately preceding retirement attributable to "non-base pay" such as overtime. See HRS §§ 88-21, 88-21.5, 88-100 (Supp. 2012); Stand. Comm. Rep. No. 3008, available at http://www.capitol.hawaii.gov/session2012/CommReports/HB2487_SD1_SSCR3008_.HTM.

[6] For instance, HRS § 88-46 (Supp. 2002) uses the terms interchangeably. HRS § 88-46 is entitled "Deducting employee contributions from *salary* and employer pick up of employee contributions[,]" but the text of the statute largely uses "compensation" throughout, stating for instance, "[t]he head of each state department and the finance director of each county shall deduct from the *compensation* of each [member][.]" HRS § 88-46(a) (emphases added).

13

Hawai'i 426, 433, 246 P.3d 358, 365 (2010) (citation omitted). In this case, the definition of HRS § 88-21.5 does not undermine ERS's interpretation and does not control our determination.

In 2004, the Legislature made several amendments to HRS Chapter 88 to conform to the requirements of section 401(a) of the Internal Revenue Code of 1986 (Code).  Stand. Comm. Rep. No. 2692, in 2004 Senate Journal, at 1358-59.  The amendments included adding a new section, section 88-21.5, which added a definition of compensation to satisfy the Code's requirement that a member's benefit be "definitely determinable."  See 26 U.S.C.A. § 401(a) (2002) (listing requirements to constitute a qualified pension plan under the Code).[7]  Nothing in the legislative history indicates the Legislature intended to alter the content of "compensation" by adding this definition, and according to ERS's administrator, ERS's internal working definition of what was included in compensation remained unchanged.  HRS § 88-21.5 states:

> **§88-21.5  Compensation.**  (a) For a member who became a member before July 1, 2012, unless a different meaning is plainly required by context, as used in this part, "compensation" means:
>
> > (1)    Normal periodic payments of money for service the right to which accrues on a regular basis in proportion to the service performed;

---

[7]    26 U.S.C.A. § 401(a)(25) states:

**(a) Requirements for qualification.**
    .  .  .  .

**(25) Requirement that actuarial assumptions be specified.**--A defined benefit plan shall not be treated as providing definitely determinable benefits unless, whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are specified in the plan in a way which precludes employer discretion.

14

> (2) Overtime, differentials, and supplementary payments;
>
> (3) Bonuses and lump sum salary supplements; and
>
> (4) Elective salary reduction contributions under sections 125, 403(b), and 457(b) of the Internal Revenue Code of 1986, as amended.

HRS § 88-21.5.

Both parties contend subsection (a)(2) supports their respective interpretations. Petitioners claim the reference to "supplementary payments" indicates the allowances should be included as compensation. ERS applies ejusdem generis and suggests the Legislature intended the term "supplementary payments" to be related to the amount or type of services provided by an employee. Overtime is "extra wages paid for excess hours worked[,]" Black's Law Dictionary 1214, and differentials are likewise paid based on the type of work or service performed. For example, police officers receive pay differentials for work performed at night; work performed under unusually hazardous conditions; being subject to departmental standards of conduct twenty-four hours a day; and work as a bomb technician or canine handler.

Although again both interpretations are plausible, the most recent amendment to HRS § 88-21.5 provides further support to ERS's position and indicates the Legislature viewed "supplementary payments" and "allowances" as distinct and separate forms of payment. In 2012, the Legislature enacted Act 152, which amended the definition of "compensation" for those who become members after June 30, 2012 by excluding "additional or extra payments" from compensation. Thus, the Legislature added

15

subsection (b) to HRS § 88-21.5, which provides:

§88-21.5  Compensation.

. . . .

(b)    For a member who becomes a member after June 30, 2012, unless a different meaning is plainly required by context, "compensation" as used in this part:

. . . .

(2)    Shall not include any other additional or extra payments to an employee or officer, including overtime, *supplementary payments*, bonuses, lump sum salary supplements, *allowances*, or differentials[.]

HRS § 88-21.5(b) (emphases added).  If, as Petitioners contend, the Legislature intended to include allowances as a form of supplementary payment, it would not have listed the two items separately.  The exclusion of "allowances" from HRS § 88-21.5(a) also supports ERS's argument that, had the Legislature intended to include allowances as "compensation," it would have expressly done so.

Finally, "[a]lthough not controlling, the uniform practical construction of a statute by those charged with carrying out the statute is entitled to much weight."  Chun v. Employees' Ret. Sys., 61 Haw. 596, 602, 607 P.2d 415, 419 (1980). See also Treloar v. Swinerton and Walberg Co., 65 Haw. 416, 424, 653 P.2d 420, 426 (1982) ("[A]dministrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons[.]").  ERS is the agency designated to administer the State's retirement system.  HRS § 88-22 (1993). Acting in that capacity, ERS's uniform practical construction for decades has been to exclude the car, uniform, and firearm allowances from its definition and calculation of

"compensation."[8]  That consistent interpretation has apparently never been formally challenged before Petitioners' claim. Furthermore, Petitioners do not dispute that their employers never made contributions to ERS based on the allowances, and the statements of earnings and deductions issued by the employers to Petitioners indicated the allowances were excluded from retirement deductions.  Therefore, Petitioners had no reasonable basis to expect retirement benefits based on the allowances.  We conclude ERS's uniform construction of "compensation" should not be overturned.

Petitioners contend ERS's interpretation and practices are arbitrary because ERS classifies meal allowances and the SOCD (which replaced the uniform and firearm allowances after 1994) as compensation.  We agree, however, with ERS's argument that the meal allowances are a component of overtime compensation rather than a reimbursement.  Under the collective bargaining agreements, the meal allowances are paid only when an officer works overtime, and the agreements expressly use the term "compensate" to characterize the payments.  The SOCD is more difficult to distinguish because it is in effect a replacement of the uniform and firearm allowances.  However, ERS has been consistent insofar as it has always included differentials as compensation, and the collective bargaining agreements accordingly characterized the payments as a differential paid for additional services rendered.  The agreements noted the SOCD was being provided for the "unique working conditions" which "subject officers to departmental standards of conduct whether on or off

_____

        [8]     The precise number of years is uncertain.  During deposition, ERS's administrator stated ERS's policy of excluding the allowances has never changed since he joined ERS in 1982.

duty, 24 hours per day." The agreements also expressly state the SOCD are "paid in the same manner as the employee's regular salary. In contrast, the agreements expressly characterized the uniform and firearm allowances as payments for "maintenance" costs. Thus, the collective bargaining agreements provided ERS with grounds to classify the SOCD as compensation, and ERS's interpretation is not arbitrary.

Petitioners also contend the allowances were not reimbursements because Petitioners' employers provided the allowances in fixed amounts regardless of the amount of money the officers spent and did not require the officers to submit receipts or otherwise account for their expenditures. However, we agree with ERS's position that the allowances are in the nature of reimbursements and are not paid in exchange for services. The fixed payments and lack of accounting requirements promote administrative convenience, sparing officers from maintaining records and employers from reviewing and calculating costs. Moreover, the language in the collective bargaining agreements providing for the allowances indicates the allowances' purpose is to help an officer offset whatever purchasing, maintenance, and repair costs he or she is likely to incur. Although some officers may not use the full allowance allotment for these purposes, the unused amount bears no relation to the officer's service, but rather is simply a reward for conserving those items.

Finally, Petitioners emphasize the allowances were taxed as income. However, nothing in the legislative history of HRS § 88-21.5 indicates any legislative intent to adopt or reference federal tax law definitions of compensation. Furthermore, federal tax regulations expressly permit

18

governmental pension plans to exclude items such as reimbursements and allowances from their calculation of retirement benefits, even if such items are gross income under federal income tax laws. 26 C.F.R. § 1.414(s)-1(c)(3) (2007) provides that a pension plan's definition of compensation may be "reduced by all of the following items (even if includible in gross income): reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation, and welfare benefits." Therefore, the taxability of the allowances is not controlling.

In sum, given the ambiguity of the statutory language at issue and its subsequent history, the entire statutory scheme, and ERS's long standing interpretation and consistent practice, we conclude ERS's interpretation was not "palpably erroneous" and is entitled to persuasive weight. The circuit court did not err in affirming ERS's decision against Petitioners.

### IV. CONCLUSION

The Final Judgment entered on January 24, 2012 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Margery Bronster
Robert M. Hatch
Catherine L. Aubuchon
(Bronster Hoshibata)
for Appellants-Appellants.

Diane Erickson
Brian P. Aburano
Diane S. Kishimoto
Deputy Attorneys General
for Appellee-Appellee.