268 P.3d 436

**WATERS OF LIFE LOCAL SCHOOL BOARD, Waters of Life Public Charter School, Rudolph Webster, Carrie Russ, and Rose Torres, Plaintiffs–Appellees,**

v.

**CHARTER SCHOOL REVIEW PANEL, Charter School Administrative Office, Board of Education of the State of Hawai'i, Department of Education of the State of Hawai'i, Defendants–Appellants,**

and

**Does 1–10, Defendants–Appellees.**

**No. 30441.**

Intermediate Court of Appeals of Hawai'i.

Oct. 21, 2011.

As Corrected Oct. 27, 2011.

Holly T. Shikada and Melissa W.H. Chee, Deputy Attorneys General, on the briefs, for Defendants–Appellants.

Deborah Day Emerson and James C. Paige, Deputy Attorneys General, on the briefs, for Plaintiffs–Appellees Waters of Life Local School Board and Waters of Life Public Charter School.

FOLEY, Presiding J., FUJISE and LEONARD, JJ.

Opinion of the Court by FOLEY, J.

Defendants–Appellants Charter School Review Panel (Panel), Charter School Administrative Office (CSAO), Board of Education of the State of Hawai'i (BOE), and Department of Education of the State of Hawai'i (DOE) (collectively, Defendants) appeal from the Final Judgment filed on March 18, 2010 in the Circuit Court of the Third Circuit[1] (circuit court). The circuit court entered the Final Judgment in accordance with its "Memorandum of Decision, Order, and Judgment" filed on July 31, 2009. The circuit court entered judgment in favor of Plaintiffs–Appellees Waters of Life Local School Board (Waters of Life Board); Waters of Life Public Charter School (Waters of Life School); Rudolph Webster, Carrie Russ, and Rose Torres (Waters of Life School Parents) (collectively, Plaintiffs) and against Defendants on all of Plaintiffs' claims.

**1.** The Honorable Glenn S. Hara presided.

**2.** "If a charter school fails to resolve deficiencies by the end of the probation period, the panel may

On appeal, Defendants contend the circuit court erred when it

(1) did not dismiss Plaintiffs' complaint for injunctive relief for lack of jurisdiction and erroneously found that Waters of Life Board was an entity separate and apart from Waters of Life School and, as a separate entity, was not precluded under Hawaii Revised Statutes (HRS) § 302B–9(d) (2007 Repl.) from bringing action for such relief;

(2) failed to find that Plaintiffs had not exhausted their administrative remedies;

(3) failed to find that Waters of Life School Parents did not have a private right of action; and

(4) failed to find that Waters of Life School Parents did not have standing before the circuit court to bring the underlying case.

## I.

HRS Chapter 302B, titled Public Charter Schools, authorizes Panel, which is administratively attached to DOE, "to issue and revoke charters, approve detailed implementation plan revisions, and conduct charter school evaluations." HRS §§ 302B–3(a) (Supp.2008) & 302B–1 (2007 Repl.).

On May 2, 2008, in response to concerns about Waters of Life School, Panel held proceedings related to the operational viability of the school. On June 12, 2008, pursuant to its authority under HRS § 302B–14(d)(5) & (6) (2007 Repl.), Panel placed Waters of Life School on probationary status for one year for alleged deficiencies related to facility health and safety issues, fiscal management, and its detailed implementation plan. At the end of the probationary period, Panel conducted a hearing on June 18, 2009 and subsequently revoked Waters of Life School's charter.[2]

On June 23, 2009, Plaintiffs filed a complaint for declaratory relief, injunctive relief, and appointment of a receiver. On June 25, 2009, Plaintiffs filed a "Motion for Tempo-

revoke the charter[.]" HRS § 302B–14(e) (2007 Repl.).

rary Injunctive Relief and Appointment of a Receiver" (Motion for Injunctive Relief). On July 8, 2009, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on Complaint Filed on June 23, 2009" (Motion to Dismiss).

On July 15, 2009, the circuit court heard arguments on Plaintiffs' Motion for Injunctive Relief. At the hearing, after the circuit court stated it would issue a preliminary injunction, the parties stipulated to a permanent injunction to expedite the appeals process. On July 31, 2009, the circuit court issued its "Memorandum of Decision, Order, and Judgment." Defendants withdrew their Motion to Dismiss on August 3, 2009.

On August 28, 2009, Defendants filed a notice of appeal, which appeal this court dismissed on December 23, 2009 for lack of appellate jurisdiction because no final judgment had been entered. On March 18, 2010, the circuit court entered its Final Judgment. Defendants timely filed their notice of appeal.

## II.

### A. Standing

 "Whether the circuit court has jurisdiction to hear the plaintiffs' complaint presents a question of law, reviewable *de novo*. A plaintiff without standing is not entitled to invoke a court's jurisdiction. Thus, the issue of standing is reviewed *de novo* on appeal." *Right to Know Comm. v. City Council, City & County of Honolulu,* 117 Hawai'i 1, 7, 175 P.3d 111, 117 (App.2007) (internal quotation marks and citations omitted).

### B. Subject Matter Jurisdiction

The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judg-

ment rendered by a circuit court without subject matter jurisdiction is void. *Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO,* 107 Hawai'i 178, 182, 111 P.3d 587, 591 (2005) (quoting *Amantiad v. Odum,* 90 Hawai'i 152, 158–59, 977 P.2d 160, 166–67 (1999)).

### C. Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed *de novo* under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle,* 107 Hawai'i at 183, 111 P.3d at 592 (internal quotation marks, brackets in original, and ellipses omitted) (quoting *Guth v. Freeland,* 96 Hawai'i 147, 149–50, 28 P.3d 982, 984–85 (2001)).

### D. Injunctive Relief

 Generally, the granting or denying of injunctive relief rests with the sound discretion of the trial court and the trial court's decision will be sustained absent a showing of a manifest abuse of discretion.

Abuse of discretion may be found where the trial court lacked jurisdiction to grant the relief, or where the trial court based its decision on an unsound proposition of law. *Sierra Club v. Dep't of Transp. of State of Hawaii,* 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (quoting *Hawai'i Pub. Employment Relations Bd. v. United Pub. Workers, Local 646, AFSCME, AFL-CIO,* 66 Haw. 461, 467–68, 667 P.2d 783, 788 (1983)).

## III.

HRS § 302B–9(d) precludes Waters of Life School and Waters of Life Board from bringing suit against any entity or agency of the State of Hawai'i (State), and therefore the circuit court erred when it did not dismiss Plaintiffs' complaint for lack of jurisdiction.

At the hearing on the Motion for Injunctive Relief, Defendants argued that the circuit court lacked jurisdiction because Plaintiffs lacked standing to sue Defendants pursuant to HRS § 302B–9 (2007 Repl.), which provides that "as public schools and entities of the State, neither a charter school nor the office may bring suit against any other entity or agency of the State." The circuit court rejected Defendants' argument, finding in the Memorandum of Decision, Order and Judgment that Waters of Life Board was "an entity separate and apart from [Waters of Life School] and not precluded by HRS § 302B–9 from bringing the present lawsuit." [3]

■ A party must have standing in order to bring a lawsuit in court. *Hanabusa v. Lingle,* 119 Hawai'i 341, 347, 198 P.3d 604, 610 (2008). If a party lacks standing, "the court is without subject matter jurisdiction to determine the action. Thus, if a court lacks jurisdiction over the subject matter of a proceeding, any judgment rendered in that proceeding is invalid." *Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.,* 113 Hawai'i 77, 94, 148 P.3d 1179, 1196 (2006) (internal

quotation marks, citations, and brackets omitted).

■ The question before us is whether the Hawai'i legislature intended to include Waters of Life Board in the meaning of "charter schools" when it enacted HRS § 302B–9(d), which prohibits charter schools from suing other entities or agencies of the State. "[W]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose," and also look to the legislative history and "consider the reason and spirit of the law." *Lingle,* 107 Hawai'i at 183, 111 P.3d at 592 (quoting *Guth,* 96 Hawai'i at 150, 28 P.3d at 985).

Based on the following review of the applicable sections of the Hawai'i Constitution, HRS, and the legislative history of HRS Chapter 302B, we conclude that Waters of Life Board and Waters of Life School are both governed by HRS § 302B–9(d). As such, Waters of Life Board and Waters of Life School are jointly and severally prohibited from suing other entities or agencies of the State, including Panel, CSAO, BOE, and DOE.

DOE is one of the principal executive departments under the supervision of the governor of the State. Haw. Const. art. V, § 6; HRS § 26–4 (2009 Repl.). DOE is headed by an executive board, which is BOE. HRS § 26–12 (2009 Repl.) Under the Hawai'i Constitution, BOE is vested with "the power, as provided by law, to formulate statewide educational policy and appoint the superintendent of education as the chief executive officer of the public school [4] system." Haw. Const. art. X, § 3. "Under policies established by [BOE], the superintendent [of education] shall administer programs of education and public instruction throughout the State, including education at the preschool, primary, and secondary school levels, ... and such other programs as may be established by law." HRS § 26–12.

---

3. The circuit court did not hold that any plaintiff other than the Waters of Life Board had standing to bring the present lawsuit.

4. HRS 302A–101 (2007 Repl.) defines public schools to mean "all academic and noncollege type schools established and maintained by [DOE] and charter schools chartered by [BOE], in accordance with law."

When the State legislature enacted HRS Chapter 302B, the Public Charter School chapter, the legislature described the charter school system as "an important complement to the [DOE's] school system, one that empowers *local school boards and their charter schools* by allowing more autonomy and flexibility and placing greater responsibility at the school level." 2006 Haw. Sess. Laws Act 298, § 1 at 1200 (emphasis added). The legislature described the charter school system as made up of BOE, CSAO, Panel, and the individual charter schools. 2006 Haw. Sess. Laws Act 298, § 1 at 1200–01.

BOE appoints Panel, which is administratively attached to DOE and is accountable to both the charter schools and BOE. HRS § 302A–1101(d) (2007 Repl.); HRS § 302B–3(a). Panel is empowered to "issue charters, oversee and monitor charter schools, hold charter schools accountable for their performance, and revoke charters." HRS § 302A–1101(d). Pursuant to HRS § 302B–3(b) (Supp.2010), the Panel is composed of the following members:

§ 302B–3 Charter school review panel; establishment; powers and duties.

. . . .

(b) The panel shall consist of twelve members, and shall include:

(1) *Two licensed teachers regularly engaged in teaching; provided that one teacher is employed at a start-up charter school, and one teacher is employed at a conversion charter school;*

(2) *Two educational officers; provided that one educational officer is employed at a start-up charter school, and one educational officer is employed at a conversion charter school;*

(3) *One member or former member of a charter school local school board;*

(4) *The chair of the board of education or the chair's designee;*

(5) A representative of Hawaiian culture-focused charter schools;

(6) Two representatives of the University of Hawaii who are not affiliated with charter schools;

(7) One member with a background in business or accounting who is not affiliated with charter schools;

(8) One member with a background in the building trades or real·estate who is not affiliated with charter schools; and

(9) A representative from the Hawaii Association of Independent Schools[.]

(Emphases added.)

Pursuant to HRS § 302B–3(i) (Supp.2009), Panel's powers and duties include the following:

(i) The powers and duties of the panel shall be to:

(1) Appoint and evaluate the executive director and approve staff and salary levels for the charter school administrative office;

(2) Review, approve, or deny charter applications for new charter schools in accordance with section 302B–5 for the issuance of new charters; provided that applicants that are denied a charter may appeal to the board for a final decision pursuant to section 302B–3.5;

(3) Review, approve, or deny significant amendments to detailed implementation plans to maximize the school's financial and academic success, long-term organizational viability, and accountability. Charter schools that are denied a significant amendment to their detailed implementation plan may appeal to the board for a final decision pursuant to section 302B–3.5;

(4) Adopt reporting requirements for charter schools;

(5) Review annual self-evaluation reports from charter schools and take appropriate action;

(6) *Evaluate any aspect of a charter school that the panel may have concerns with and take appropriate action, which may include probation or revocation;*

. . . .

(9) Review, modify, and approve charter schools' all means [sic] of finance budget, based upon criteria and an approval process established by the panel;

(10) Survey all charter school facilities prior to, and in preparation for, determining recommendations to allocate non-per-pupil facilities funds to charter schools with facilities needs.

. . . .

(j) In the case that the panel decides not to issue a new charter, or to approve significant amendments to detailed implementation plans, the board may adopt rules for an appeals process pursuant to section 302B–3.5.

In addition to Panel, the legislature established the CSAO, administered by an executive director appointed by Panel. HRS § 302B–8(a) (2007 Repl.). The executive director is responsible for the "internal organization, operation, and management of the charter school system." HRS § 302B–8(b) (Supp.2010).

To establish a charter school, the interested party or parties, whether a community group, a group of teachers and/or administrators, or a nonprofit organization, submits a letter of intent to the CSAO. HRS § 302B–5(b) (2007 Repl.). At the same time, the charter school applicant must also "establish an interim local school board [ (the LSB) ] as its governing body, and develop a detailed implementation plan." HRS § 302B–5(b).

The LSB is "the autonomous governing body of a charter school" and

(1) . . . is responsible for the financial and academic viability of the charter school and implementation of the charter;

(2) [p]ossesses the independent authority to determine the organization and management of the school, the curriculum, virtual education, and compliance with applicable federal and state laws; and

(3) [h]as the power to negotiate supplemental collective bargaining agreements with exclusive representatives of their employees.

HRS § 302B–1 (Supp.2010); *see also* HRS § 302B–7(c) (2007 Repl.).

The LSB members include, at a minimum, one representative from each of the following groups:

(1) Principals;

(2) Instructional staff members selected by the school instructional staff;

(3) Support staff selected by the support staff of the school;

(4) Parents of students attending the school selected by the parents of the school;

(5) Student body representatives selected by the students of the school; and

(6) The community at large.

HRS § 302B–7(a) (2007 Repl.).

Panel gives the interim LSB the charter school application form and completion guidelines. HRS § 302B–5(c)(2) (2007 Repl.). A significant application item is the detailed implementation plan. HRS § 302B–5(d) (2007 Repl.). The plan must include:

(1) A description of employee rights and management issues and a framework for addressing those issues that protects the rights of employees;

(2) A plan for identifying, recruiting, and retaining highly-qualified instructional faculty;

(3) A plan for identifying, recruiting, and selecting students that is not exclusive, elitist, or segregationist;

(4) The curriculum and instructional framework to be used to achieve student outcomes, including an assessment plan;

(5) A plan for the assessment of student, administrative support, and teaching personnel performance that:

(A) Recognizes the interests of the general public;

(B) Incorporates or exceeds the educational content and performance standards developed by the department for the public school system;

(C) Includes a system of faculty and staff accountability that holds faculty and staff both individually and collectively accountable for their

performance, and that is at least equivalent to the average system of accountability in public schools throughout the State; and

(D) Provides for program audits and annual financial audits;

(6) A governance structure for the charter school that incorporates a conflict of interest policy and a plan for periodic training to carry out the duties of local school board members;

(7) A financial plan based on the most recent fiscal year's per-pupil charter school allocation that demonstrates the ability to meet the financial obligations of one-time, start-up costs and ongoing costs such as monthly payrolls, faculty recruitment, professional development, and facilities costs; and

(8) A facilities plan.

HRS § 302B–5(d).

The implementation plan includes both governance and educational issues, all of which are the ultimate responsibility of the LSB as the governing body of the charter school.

Panel reviews the application; informs the interim LSB whether or not the application is complete; and if the application is not complete, informs LSB what elements need to be completed. HRS § 302B–5(c)(4) (2007 Repl.). After completing the missing elements, the application can be resubmitted. HRS § 302B–5(c)(5) (2007 Repl.). If Panel does not approve the application, Panel must provide detailed reasoning for the denial and allow the interim LSB to resubmit an amended plan within a prescribed time period. HRS § 302B–5(c)(8) (2007 Repl.). If the amended plan is not approved, the charter school applicant may appeal the decision to BOE. HRS § 302B–3.5 (2007 Repl.). If the application is approved, Panel issues a charter to LSB, HRS § 302B–1 (2007 Repl.), and the charter school may begin operations. HRS § 302B–5(c)(10) (2007 Repl.).

Each charter school must conduct an annual self-evaluation at the end of the school year and send a report to Panel. HRS § 302B–14(a) (2007 Repl.). Panel may also conduct a special evaluation of a charter school at any time. HRS § 302B–14(c) (2007 Repl.). The LSB is accountable to Panel. HRS § 302B–3(i). Panel has the authority to revoke the charter if Panel determines the charter school has not corrected identified deficiencies related to student performance, financial plans, organizational viability, or health and safety. HRS § 302B–14(b)–(f) (2007 Repl.). A charter school may appeal the revocation of its charter to BOE pursuant to HRS § 302B–3.5. The BOE has sixty calendar days from the filing of the appeal in which to issue a final decision. *Id.*

The relationship, responsibilities, duties, and authority of each of the key participants in the charter school system leads us to the conclusion that the LSB is not "an entity separate and apart" from the charter school, but instead, the LSB and the charter school jointly *are* the charter school. The LSB receives the charter for the charter school. HRS § 302B–1 (Supp.2010). The LSB is responsible for the implementation of the charter, is accountable for the financial and academic viability of the school, determines the organization and management of the school, and assures compliance with federal and state laws. HRS § 302B–7(c). The LSB is created to govern its charter school and does not exist absent a duly authorized charter school to govern. Conversely, the charter school cannot exist without an LSB governing body.

Furthermore, as the governing body of the charter school, the LSB, together with its charter school, is part of the charter school system. The charter school system, which includes Panel and CSAO, is administratively attached to DOE, one of the principal departments under the executive branch of the State. As part of a State entity administratively attached to DOE, the LSB is considered an arm of the State. HRS § 26–35(b) (2009 Repl.) ("Every board or commission established or placed within a principal department for administrative purposes or subject to the administrative control or supervision of the head of the department shall be considered an arm of the State and shall enjoy the same sovereign immunity available to the State.").

The LSB is also afforded the same protections afforded BOE. HRS § 302B–7(f) (2007 Repl.) ("The State shall afford the [LSB] of any charter school the same protections as the State affords [BOE]."). As a further indication that the LSB is a state entity, the LSB is specifically identified as a state board under HRS § 26–35.5(a) (2009 Repl.) ("For purposes of this section, "member" means any person who is appointed, in accordance with the law, to serve on a temporary or permanent state board, including members of the [LSB] of any charter school established under chapter 302B[.]").

Plaintiffs argue that, based on *Bd. of Educ. of State of Hawaii v. Waihee*, 70 Haw. 253, 768 P.2d 1279 (1989), Waters of Life Board had standing to bring the declaratory judgment action. Plaintiffs contend *Waihee* stands for the proposition that one State agency may seek a judicial ruling on whether another State agency exceeded its statutory authority.

*Waihee* involved an intra-executive dispute where BOE alleged that Governor Waihee exceeded his authority when he imposed spending restrictions on BOE and DOE. *Id.* at 258, 768 P.2d at 1282. The Hawai'i Supreme Court determined that it could rule on this dispute between the governor and one of his executive departments. *Id.* at 263, 768 P.2d at 1285.

The case before us is inapposite to *Waihee.* In the instant case, Waters of Life Board is not a State executive department seeking a declaratory action against the governor. Instead, it is an entity within an executive department seeking to sue the executive department (DOE) and its administrative entities (BOE, CSAO, and Panel). Additionally, Waters of Life Board, as the governing body of its charter school, is statutorily prohibited from suing another State entity, pursuant to HRS § 302B–9(d). The proper avenue to seek a ruling on Waters of Life Board's disagreement with Panel's revocation is to appeal to BOE, as set out in HRS § 302B–3.5.

The circuit court erred when it determined that Waters of Life Board was a separate entity from Waters of Life School and was not governed by the express statutory language prohibiting a charter school from suing another agency or entity of the State. "A judgment rendered by a circuit court without subject matter jurisdiction is void." *Lingle*, 107 Hawai'i at 182, 111 P.3d at 591 (quoting *Amantiad*, 90 Hawai'i at 159, 977 P.2d at 167). The circuit court did not address the question of whether the Waters of Life School Parents had a private right of action and standing before the circuit court to bring the underlying case. Because this was not addressed below, we decline to address it in this appeal.[5]

### IV.

The Final Judgment filed on March 18, 2010 in the Circuit Court of the Third Circuit is reversed.

---

**5.** The Waters of Life School Parents did not file an answering brief or otherwise respond to this appeal.