**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003857
24-OCT-2014
09:16 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---


POFOLK AVIATION HAWAII, INC. and HALE OʻLELE CORP.,
Plaintiffs-Appellants,
v.
DEPARTMENT OF TRANSPORTATION FOR THE STATE OF HAWAIʻI,
GLENN M. OKIMOTO, FORD FUCHIGAMI, and SIDNEY A. HAYAKAWA,
Defendants-Appellees,
and
JOHN AND/OR JANE DOES 1-10, DOE ENTITIES 1-10,
Defendants


NO. CAAP-13-0003857


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-0787-03)


OCTOBER 24, 2014


FOLEY, PRESIDING J., FUJISE AND GINOZA, JJ.


OPINION OF THE COURT BY FOLEY, J.

Plaintiffs-Appellants Pofolk Aviation Hawaii, Inc. (**Pofolk Aviation**) and Hale Oʻlele Corp. (**Hale Oʻlele**), (together, **Plaintiffs**) appeal from (1) the August 1, 2013 "Order Denying Plaintiffs Pofolk Aviation Hawaii, Inc. and Hale Oʻlele Corp. Motions for Temporary and Permanent Injunctions" (**Order Denying Injunctions**); (2) the September 24, 2013 "Order Denying

Plaintiffs' Claim for a Permanent Injunction and Approving the Voluntary Dismissal of All Other Claims and Counter Claims," (**Dismissal Order**); and (3) the September 24, 2013 Judgment (**Judgment**) all entered in the Circuit Court of the First Circuit[1] (**circuit court**).

Plaintiffs contend the circuit court erred by:

(1) incorrectly applying Hawaii Revised Statutes (**HRS**) § 261-12 (2007 Repl.) in the Order Denying Injunctions by determining Plaintiffs were unlikely to succeed on the merits of their case;[2]

---

[1] The Honorable Edwin C. Nacino presided.

[2] HRS § 261-12 provides in pertinent parts:

§261-12 **Rules, standards.** (a) Powers to adopt. The director of transportation may perform such acts, issue and amend such orders, adopt such reasonable general or special rules and procedures, and establish such minimum standards, consistent with this chapter, as the director deems necessary to carry out this chapter and to perform the duties assigned thereunder, all commensurate with and for the purpose of protecting and insuring the general public interest and safety, the safety of persons operating, using, or traveling in aircraft, and the safety of persons and property on land or water, and developing and promoting aeronautics in the State. No rule of the director shall apply to airports or air navigation facilities owned or operated by the United States.

In furtherance of the duties assigned under this chapter, the director may adopt rules relating to:

(1)  Safety measures, requirements and practices in or about the airport premises;

(2)  The licensing and regulation of persons engaged in commercial activities in or about the airport premises;

(3)  The regulation of equipment and motor vehicles operated in or about the airport operational area;

(4)  Airport security measures or requirements, and designation of sterile passenger holding areas and operational areas;

(5)  The regulation of motor vehicles and traffic;

(6)  Any other matter relating to the health, safety and welfare of the general public and persons operating, using, or traveling in aircraft.

. . . .

(continued...)

(2) determining that the process by which Defendants-Appellees Department of Transportation for the State of Hawai'i (**DOT**), Glenn Okimoto (**Okimoto**), Ford Fuchigami (**Fuchigami**), and Sidney A. Hayakawa (**Hayakawa**) (collectively, **Defendants**) adopt written procedures includes an informational hearing and opportunity for the public to comment before procedures are adopted; and

(3) concluding that Defendants duly exercised their power to impose landing fees on flight operations at the Dillingham Airfield on O'ahu by and through its adopted procedures.

### I.

The DOT Airport Division operates a single 5,000 foot runway primarily for commercial glider and sky diving operations at Dillingham Airfield in Mokuleia, O'ahu (**Dillingham Airfield**) under a lease from the United States Army (**Army Lease**). Plaintiffs are Hawai'i corporations whose operations are based out of Dillingham Airfield.

Clause 32 of the Army Lease, titled "Additional Site Conditions," provides "Dillingham Airfied shall be used by and under the authority of the lessee [DOT] for the sole purpose of operating an airport[.]" According to Hayakawa, the Administrative Services Officer for DOT, Airports Division, the term of the lease was for five years, ending July 5, 2014.

By letter dated December 17, 2012, Eric A. Seitz (**Seitz**), counsel for Frank Hinshaw (**Hinshaw**), Pofolk Aviation and Hale O'lele's principal, wrote to Okimoto in his capacity as

---

[2](...continued)
(d) Conformity to federal legislation and rules. No rules, orders, or standards prescribed by the director shall be inconsistent with, or contrary to, any act of the Congress of the United States or any regulation promulgated or standard established pursuant thereto.

(e) How made. All rules having the force and effect of law, shall be adopted by the director pursuant to chapter 91.

(f) Distribution. The director shall provide for the publication and general distribution of all of its rules and procedures having general effect.

Director of Transportation with the DOT. Seitz stated Hinshaw was willing to file all required reports and pay all past and future landing fees that were lawfully owed.

By letter dated February 20, 2013, Fuchigami, Deputy Director of DOT Airports Division, wrote to Hinshaw informing him that Pofolk Aviation was delinquent in its reporting since the end of November 2012 and its payment of landing fees to DOT in the amount of $267,261.36. DOT stated it would forego its recovery rights for thirty days if Pofolk Aviation tendered payment of the previously billed amount of $50,837.99, payment of the previously unbilled amount of $214,152.10, and a full up-to-date report of all landings. Fuchigami also attached an accounting sheet listing airport landings dating from April 2005 and ending June 2013.

By letter dated February 26, 2013, Fuchigami wrote to Hinshaw in his capacity with Hale O'lele, informing him that the DOT concluded:

> all landings reported by [Hale O'lele] since 2005 as "non-revenue" landings were, in fact, subject to the payment of landing fees to [the DOT]. Additionally, [the DOT] is concerned that [Hale O'lele] may have been operating between 2007 and 2011, and after November 2012, during which time no landings of any kind were reported.

Fuchigami stated Hale O'lele owed $2,271.27 plus interest in the amount of $952.81, which was to be paid no later than March 11, 2013.

By letter dated February 28, 2013, Seitz responded by submitting the monthly landing reports from December 2012 and January 2013, and $50,837.99 as partial payment for disputed landing fees, noting that the payment was made under protest.

By letter dated March 1, 2013, Hayakawa informed Hinshaw the DOT concluded that Pofolk Aviation's interpretation of what qualifies as a flight exempt from landing fees was "incorrect" and extended the DOT's offer to forego its rights to recovery for another thirty days due to errors in its earlier February 2013 letter.

On March 14, 2013, Plaintiffs filed their "Complaint for Return of Funds Paid Under Protest, Declaratory and

Injunctive Relief" (**Complaint**). Plaintiffs alleged HRS § 261-12(a), which provides "[n]o rule of the director shall apply to airports or air navigation facilities owned or operated by the United States[,]" precluded the DOT from enforcing rules requiring payment of landing fees for operations at Dillingham Airfield. Plaintiffs sought: (1) a return of $50,837.99 paid under protest, along with interest; (2) a declaratory judgment that landing fees set forth under Hawaii Administrative Rules (**HAR**) § 19-16.1-3 (am. 2000)[3] were inapplicable to Dillingham Airfield and therefore Plaintiffs were exempt from such fees; and (3) injunctive relief preventing Defendants from taking further action to impose these fees on Plaintiffs.

On April 8, 2013, Plaintiffs filed their "Motion for a Preliminary and Permanent Injunction" (**Motion for Injunction**) restraining and preventing Defendants "from imposing illegal and unauthorized landing fees on Plaintiffs for landings at Dillingham Airfield . . . ." Plaintiffs argued that landing fees imposed under HAR § 19-16.1-3 on Pofolk Aviation and Hale O'lele were "clearly invalid, unauthorized[,] and exceed [the DOT's] grant of statutory authority because this airfield is an airport or air navigation facility owned by the United States."

On April 8, 2013, Defendants filed their "Answer of [Defendants] in their Official Capacities" (**Answer**) to Plaintiffs' Complaint and a "Counterclaim by [Defendants] in Their Official Capacities Against [Pofolk Aviation and Hale O'lele] to [the Complaint]" (**Counterclaim**). Defendants' Counterclaim alleged Plaintiffs had accrued landing fee obligations and asked the circuit court to award the DOT judgment

---

[3] HAR § 19-16.1-3, provides:

§19-16.1-3 Airports system landing fee. There shall be imposed an airports system landing fee under this chapter for the purpose of recovering costs attributable to the airfield activity center; this fee shall be based on landings at an airport in the airports system. The airports system landing fee for an overseas landing at an airport in the airports system shall be $2.980 per one thousand pounds of approved maximum landed weight. The airports system landing fee for an interisland landing at an airport in the airports system shall be $0.954 per one thousand pounds of approved maximum landed weight.

against Plaintiffs for unpaid landing fees, interest, and penalties in an amount to be determined at trial; declare the DOT is empowered by law to impose landing fees and charges at Dillingham Airfield; and other relief deemed appropriate.

On April 25, 2013, Defendants filed their "Memorandum in Opposition to Plaintiffs' [Motion for Injunction]" (**Opposition**). Defendants argued that Plaintiffs could not prevail on the merits of their case because landing fees at Dillingham Airfiled were not imposed by "rule" but "by virtue of duly adopted [DOT] Procedures, which are expressly authorized by [HRS § 261-12(a)]." Defendants pointed out that HRS §261-7(e) (2007 Repl.) "explicitly empowers [the DOT] to 'fix and regulate, from time to time, reasonable landing fees for aircraft . . . and other reasonable charges for the use and enjoyment of the airports . . . .'"[4] Defendants argued the statute should be

---

[4]  HRS § 261-7, provides in relevant part:

**§261-7  Operation and use privileges.**
.   .   .   .

(e) The department may fix and regulate, from time to time, reasonable landing fees for aircraft, including the imposition of landing surcharges or differential landing fees, and other reasonable charges for the use and enjoyment of the airports and the services and facilities furnished by the department in connection therewith, including the establishment of a statewide system of airports landing fees, a statewide system of airports support charges, and joint use charges for the use of space shared by users, which fees and charges may vary among different classes of users such as foreign carriers, domestic carriers, interisland carriers, air taxi operators, helicopters, and such other classes as may be determined by the director, for the purpose of meeting the expenditures of the statewide system of airports set forth in section 261-5(a), which includes expenditures for capital improvement projects approved by the legislature.

In setting airports rates and charges, including landing fees, the director may enter into contracts, leases, licenses, and other agreements with aeronautical users of the statewide system of airports containing such terms, conditions, and provisions as the director deems advisable.

If the director has not entered into contracts, leases, licenses, and other agreements with any or fewer than all of the aeronautical users of the statewide system of airports prior to the expiration of an existing contract, lease, license, or agreement, the director shall set and
(continued...)

interpreted pursuant to HRS § 1-18 (2009 Repl.), titled "Or", "and", which provides: "Each of the terms 'or' and 'and', has the meaning of the other or of both."

Attached to the Defendants' Opposition was a declaration from Hayakawa, in which he declared "[s]eparate and apart from creating rules pursuant to [HRS] Chapter 91, [the DOT] has established a process for establishing written procedures for the operations of the airport system" and "[t]he requirement for aeronautical users such as [P]laintiffs to pay landing fees at Dillingham Airfield, is established by [the DOT] Procedures." Hayakawa also declared that if the DOT was prohibited from applying its rules, procedures, and operations at Dillingham Airfield, they "would have to seriously consider closing the Airfield until necessary and appropriate procedures are in place, or until [HRS] 261-12 is amended" and that such a shutdown "may constitute a breach of the [DOT's] lease with the Army[.]"

Defendants also appended a copy of DOT Procedure No. 1.1 ("Updating Airports Division Procedures") and DOT Procedure No. 4.5 ("Schedule of Rates and Charges"), which included a

---

[4](...continued)
impose rates, rentals, fees, and charges pursuant to this subsection without regard to the requirements of chapter 91; provided that a public informational hearing shall be held on the rates, rentals, fees, and charges.

The director shall develop rates, rentals, fees, and charges in accordance with a residual methodology so that the statewide system of airports shall be, and always remain, self-sustaining. The rates, rentals, fees, and charges shall be set at such levels as to produce revenues which, together with aviation fuel taxes, shall be at least sufficient to meet the expenditures of the statewide system of airports set forth in section 261-5(a), including expenditures for capital improvement projects approved by the legislature, and to comply with covenants and agreements with holders of airport revenue bonds.

The director may develop and formulate methodology in setting the various rates, rentals, fees, and charges imposed and may determine usage of space, estimate landed weights, and apply such portion of nonaeronautical revenue deemed appropriate in determining the rates, rentals, fees, and charges applicable to aeronautical users of the statewide system of airports.

(Emphases added.)

schedule for rates and charges for operations at Dillingham Airfield.

On April 26, 2013, Plaintiffs filed their "Answer to Counterclaim."

At its May 9, 2013 hearing on Plaintiffs' Motion for Injunction, the circuit court asked Seitz to address what "irreparable harm" would befall Plaintiffs and Seitz affirmed "this is just economic harm[.] But we're talking about some $250,000 in fees . . . ." The circuit court denied the Motion for Injunction, stating its belief that genuine issues of material fact existed "regarding the intent of [HRS §] 261-12" in reference to the "and" and "or" language raised by Defendants. The circuit court held the following colloquy with Defendants' counsel, Deputy Attorney General Jack A. Rosenzweig **(Rosenzweig)**:

> [THE COURT]: [HRS §] 261-7(e) convinces the court that [the DOT] has the authority, the statutory authority, to fix and regulate the reasonable landing fees for aircraft at the various airports and/or navigational facilities. It also goes on to state that "the services and facilities furnished by [the DOT] in connection herewith."
>
> What's convincing to the court is the remainder of that paragraph whereby it states "director shall set and impose rates, rentals, fees, charges pursuant to this subsection without regard to the requirements of chapter 91." Chapter 91 is the [HAR]. The court is not inclined to adopt the expansive request regarding that procedures are rules and orders. Specifically, HAR needs certain requirements to change those rules. I believe procedures and acts by the executive branch are done differently, although, [Rosenzweig], you're saying there is due process with regards to the procedures, correct?
>
> [ROSENZWEIG]: That's correct, Your Honor.
>
> THE COURT: All right. So looking at the facts that are undisputed with regards to that, if I look at the three-part test for a preliminary injunction, the court doesn't believe that you've met the first part which is likely to succeed on the merits. There may be an issue as to calculation of the fees, but with regards to the DOT having the statutory authority to impose the landing fees even on Dillingham, which the land is owned by the U.S. Army, court is convinced that they do have that authority. So that fails the first part.
>
> The second part which is irreparable injury, like I said, Mr. Seitz, I don't believe this is a case of irreparable injury. Your client can get economic damages in several different fashions which would be refunds, which would be suing for lost profits, business valuation, things of that nature, so it clearly goes against the general

definition of irreparable harm. So the court is not convinced of that.

And then finally, public interest. This is not a case that, I think, it goes against your client's interest in a sense that the public is better served with having airport facilities available to it. And if the State were not allowed to collect the landing fees pursuant to the statute, that goes against public interest because then the taxpayers, they are further burdened for that.

So for those reasons, the court is going to deny the preliminary injunction and the permanent injunction. Permanent injunction can be denied. It's without prejudice. At some point in time, if this case continues forward, you can raise that issue again.

On August 1, 2013, the circuit court filed its Order Denying Injunctions, which included findings that:

2. Dillingham Airfield is owned by the United States and, through the United States Army, is leased to the DOT for purposes of operating an airport facility.

. . . .

4. HRS § 261-12(a) empowers [the] DOT as follows:

"**§261-12 Rules, standards.** (a) Powers to adopt. The director of transportation may perform such acts, issue and amend such orders, adopt such reasonable general or special **rules and procedures**, and establish such minimum standards, consistent with this chapter, as the director deems necessary to carry out this chapter and to perform the duties assigned thereunder, all commensurate with and for the purpose of protecting and insuring the general public interest and safety, the safety of persons operating, using, or traveling in aircraft, and the safety of persons and property on land or water, and developing and promoting aeronautics in the State. **No rule** of the director shall apply to airports or air navigation facilities owned or operated by the United States." (Emphasis added[.])

The Order Denying Injunctions concluded there are "genuine issues of material fact regarding the factual context of the dispute that must be resolved before a ruling on the merits can be made" and that it was "unable to determine if it is appropriate to apply [HRS] §1-18 in interpreting the last sentence of [HRS] §261-12." The circuit court also found "it is not a legal requirement that DOT landing fees be established through the Administrative Rule making process" and concluded that the DOT required Plaintiffs to pay landing fees pursuant to written procedures that the DOT was empowered to adopt under

9

HRS § 261-12.  The circuit court concluded:

> VI.   The requirement for aeronautical users such as Plaintiffs to pay landing fees at Dillingham Airfield is established by duly promulgated [DOT] Procedures.  Procedure 4.5, Schedule of Rates and Charges of the Airports Division Procedures provides in pertinent part []:
>
> > "4.5.01 <u>PURPOSE</u>.  The purpose of this procedure is to establish a schedule of rental rates and charges for the use of facilities and services of the public airports operated by the State Airports Division.
> >
> > \* \* \*
> >
> > 4.5.03 <u>APPLICABILITY</u>.  This procedure *applies to* the Property Management and Land Acquisition staff of the State Airports Division and *users of State Airports Division facilities.*
> >
> > \* \* \*
> >
> > 4.5.04 <u>PROCEDURES</u>.
> >
> > \* \* \*
> >
> > E.   *Airport System Fees and Charges* . . .  Any aircraft operator who is not a party to an Airport-Airline Lease, *landing at a state airport, shall pay airports systems fees and charges* as established by [Hawaii] Administrative Rules of the Department of Transportation[.]"

The Order Denying Injunctions further provided:

> **RULING**
>
> Based upon the foregoing Findings and Conclusions, the Court finds that Plaintiffs are unlikely to succeed on the merits, a condition for the granting of a preliminary injunction.
>
> The Court further finds that the requirement of 'irreparable injury' has not been satisfied in that Plaintiffs' harm would be economic in nature that can be remedied by actions for refunds, lost profits, business valuations and remedies of a similar nature.
>
> Finally, the Court determines that the public interest does not favor the granting of the temporary injunction.  The public is better served by having airport facilities available to it.  The continued operation of Dillingham Airfield would be threatened if [the] DOT was unable to collect landing fees to support the cost of the operations at the facility.
>
> For the foregoing reasons,  Plaintiffs' Motion for a Preliminary and Permanent Injunction are **DENIED**, without prejudice.

On August 27,2013, Plaintiffs filed a "Motion for Leave to File Interlocutory Appeal From [the Order Denying Injunctions]."

On September 24, 2013, the parties filed a "Stipulation and Order," which noted that parties had stipulated to a procedure for resolving outstanding issues.

On September 24, 2013, the circuit court filed its Dismissal Order in which it approved the stipulation. The circuit court ordered: the hearing on Plaintiffs' Motion for Injunction on September 25, 2013 would be deemed a consolidated hearing on the merits of Plaintiffs' cause of action for a permanent injunction; Plaintiffs' claim for a permanent injunction was denied; Defendants' Counterclaim was voluntarily dismissed without prejudice; and all other claims, counterclaims, and defenses were voluntarily dismissed without prejudice. The circuit court entered Judgment on September 24, 2013.

On October 8, 2013, Plaintiffs filed their notice of appeal.

## II.

Plaintiffs' appeal seeks reversal of the circuit court's orders and judgment denying their requested injunctive relief. Given the parties' stipulation and the circuit court's order thereto, the circuit court ultimately ruled that Plaintiffs' claim for permanent injunction was denied based on the reasoning in the Order Denying Injunctions. We therefore review the denial of Plaintiffs' request for permanent injunction. "[T]he appropriate test in this jurisdiction for determining whether a permanent injunction is proper is: (1) whether the plaintiff has prevailed on the merits; (2) whether the balance of irreparable damage favors the issuance of a permanent injunction; and (3) whether the public interest supports granting such an injunction." Office of Hawaiian Affairs v. Hous. & Comm. Dev. Corp. of Hawaii (HCDCH), 117 Hawai'i 174, 212, 177 P.3d 884, 922 (2008) (emphasis added); rev'd on other grounds by Hawaii v. Office of Hawaiian Affairs, 556 U.S. 163 (2009). We review the circuit court's denial of injunctive relief to Plaintiffs under an abuse of discretion standard. See Waters of Life Local Sch. Bd. v. Charter Sch. Review Panel, 126 Hawai'i 183, 185-86, 268 P.3d 436, 438-39 (App.

11

2011, as corrected Oct. 27, 2011) ("Generally, the granting or denying of injunctive relief rests with the sound discretion of the trial court and the trial court's decision will be sustained absent a showing of a manifest abuse of discretion." (citations omitted)).

Plaintiffs contend the circuit court incorrectly interpreted HRS § 261-12(a) by determining landing fees imposed by DOT's Procedure No. 4.5.04E at Dillingham Airfield are not barred by HRS § 261-12(a). DOT Procedure No. 4.5.04E states "[a]ny aircraft operator . . . landing at a state airport shall pay airports system fees and charges as established by [the HAR] of the [DOT]." According to Plaintiffs, because Procedure No. 4.5.04E does not itself set forth the landing fees, but rather applies those fees set forth in HAR § 19-16.1-3 the circuit court erred by concluding the DOT had made no "rule" in violation of HRS § 261-12(a). Plaintiffs further contend DOT Procedure 4.5.04E requires payment of airports system fees and charges "as established by [the HAR]" and thus "DOT Procedure No. 4.5.04E constitutes an application of DOT Rule §19-16.1-3 in violation of HRS §261-12(a)[.]"

Plaintiffs' contention concerns the circuit court's interpretation of HRS § 261-12(a) as applying to administrative "rules" and not "procedures" in concluding the DOT was empowered "to impose landing fees on fight [sic] operations at Dillingham Airfield by and through its [Procedure No. 4.5.04E]." An appellate court

> generally reviews questions of statutory interpretation de novo, 'Olelo v. Office of Info. Practices, 116 Hawai'i 337, 344, 173 P.3d 484, 491 (2007), but, "[i]n the case of . . . ambiguous statutory language, the applicable standard of review regarding an agency's interpretation of its own governing statute requires this court to defer to the agency's expertise and to follow the agency's construction of the statute unless that construction is palpably erroneous," Vail v. Employees' Ret. Sys., 75 Haw. 42, 66, 856 P.2d 1227, 1240 (1993).

Gillan v. Gov't Employees Ins. Co., 119 Hawai'i 109, 114, 194 P.3d 1071, 1076 (2008). An ambiguity exists "[w]hen there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute," or if the statute "is

capable of being understood by reasonably well-informed people in two or more different senses." Farmer v. Admin. Dir. of Court, State of Haw., 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (citation omitted).

In the instant case, the DOT's employee, Hayakawa, declared HRS § 261-12(a) empowered the DOT to "*adopt* such reasonable general or special *rules* and *procedures* . . . as the director deems necessary to carry out this chapter and to perform duties assigned thereunder[.]" Hayakawa represented that at Dillingham Airfield, revenues generated from landing fees and other charges from aircraft operators, pursuant to the DOT procedures, are part of a calculation of rates and fees in compliance "with the statutory mandate that the statewide system of airports be financially self-sustaining."[5]

The DOT interpreted the limitation of HRS § 261-12(a) (2007 Repl.) on the DOT's authority to apply its rules to a federally owned airport as inapposite to DOT's authority to impose landing fees at Dillingham Airfield pursuant to the DOT procedures. Hayakawa declared the DOT had established its written procedures "[s]eparate and apart from creating rules pursuant to [HRS] Chapter 91" and HRS § 261-12 "has never been interpreted by [the DOT] as prohibiting [the DOT] from operating it as a state airport facility, collecting fees, charges and rents imposed by its Procedures . . . ."

---

[5]    Hayakawa referenced HRS § 261-7(e), which provides in pertinent part:

> The director shall develop rates, rentals, fees, and charges in accordance with a residual methodology so that the statewide system of airports shall be, and always remain, self-sustaining. The rates, rentals, fees, and charges shall be set at such levels as to produce revenues which, together with aviation fuel taxes, shall be at least sufficient to meet the expenditures of the statewide system of airports set forth in section 261-5(a), including expenditures for capital improvement projects approved by the legislature, and to comply with covenants and agreements with holders of airport revenue bonds.

(Emphasis added.)

In assessing the DOT's construction of HRS § 261-12(a), we note that "[a]lthough not controlling, the uniform practical construction of a statute by those charged with carrying out the statute is entitled to much weight." Chun v. Employees' Ret. Sys., 61 Haw. 596, 602, 607 P.2d 415, 419 (1980) (citing Keller v. Thompson, 56 Haw. 183, 532 P.2d 664 (1975); Territory v. Honolulu Rapid Transit & Land Co., 23 Haw. 387 (1916)); see also Fratinardo v. Employees' Ret. Sys. of State of Hawaii, 129 Hawaiʻi 107, 115-16, 295 P.3d 977, 985-86 (App. 2013).

Our assessment of the DOT's practices is further informed by Hayakawa's declarations that the DOT "has always exercised control" over Dillingham Airfield operations, users, and tenants; its users "regularly paid the assessed landing fees[;]" and "[t]his litigation is the first time Plaintiffs, or anyone else has claimed that they are not obligated to pay such fees because the Airfield is owned by the federal government." Hayakawa's declaration constituted evidence of the DOT's consistent and generally unchallenged practice of assessing landing fees and charges against users of Dillingham Airfield. Hawaiʻi courts will not overturn administrative agency practices that have been

> consistent and generally unchallenged . . . except for very cogent reasons if the scope of the command is indefinite and doubtful . . . . The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.

Treloar v. Swinerton & Walberg Co., 65 Haw. 415, 424, 653 P.2d 420, 426 (1982) (quoting Norwegian Nitrogen Products Co. v. U.S., 288 U.S. 294, 315 (1933)).

According much weight to the DOT's construction of HRS § 261-12(a) and in light of their consistent practice of assessing landing fees at Dillingham Airfield, we conclude Plaintiffs' contention does not establish the DOT's interpretation was palpably erroneous and the circuit court did not err by determining that the DOT's assessment of landing fees at Dillingham Airfield against Plaintiffs did not constitute a

violation of HRS § 261-12(a)'s prohibition against applying the DOT "rules" to federally owned or operated airports.

Plaintiffs further contend the circuit court erred by determining DOT's procedures included an informational hearing and opportunity for the public to comment before procedures are adopted. HRS § 261-7(e) states that DOT shall set rates, rentals, fees, and charges without regard to requirements of HRS Chapter 91, "provided that a public informational hearing shall be held on the rates, rentals, fees, and charges."

In the Order Denying Injunctions, the circuit court stated "[DOT] has in place a process for adopting written procedures which it is empowered to do by the language of [HRS]. §261-12. The procedure process includes an informational hearing and opportunity for the public to comment before procedures are adopted." Defendants made an offer of proof in the circuit court that Hayakawa would testify that public hearings and comments occur. At a May 9, 2013 hearing, Defendants' counsel, Rosenzweig made an offer of proof as to what Hayakawa would testify; "[w]hat he would testify to essentially is that the procedure process with [the DOT] . . . is something more than just cranking out edicts and orders. It's a formal process that involves public notice and public hearing, and these procedures are, in fact, published and become the policy of [the DOT]." Seitz stated that he would stipulate that Hayakawa would so testify. This stipulated offer of proof supported the circuit court's finding that the DOT procedures included a public comment and informational hearing, and we therefore conclude the finding did not constitute clear error.

Plaintiffs do not prevail on the merits of their claim that DOT violated HRS § 261-12(a) by imposing charges and fees on Plaintiffs' operations at Dillingham Airfield; do not meet the first element of the test for a permanent or a preliminary injunction; and the circuit court did not abuse its discretion by denying their request for a permanent injunction.

## III.

For the foregoing reasons, we affirm (1) the August 1, 2013 "Order Denying Plaintiffs Pofolk Aviation Hawaii, Inc. and Hale O'lele Corp. Motions for Temporary and Permanent Injunctions"; (2) the September 24, 2013 "Order Denying Plaintiffs' Claim for a Permanent Injunction and Approving the Voluntary Dismissal of All Other Claims and Counterclaims"; and (3) the September 24, 2013 Judgment all entered in the Circuit Court of the First Circuit.

On the briefs:

Eric A. Seitz
Della Au Belatti
Sarah R. Devine
for Plaintiffs-Appellants.

Michael S. Vincent
Jack Rosenzweig
Deputy Attorneys General
for Defendants-Appellees.